851 P.2d 336

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Quincy Raymond MATTESON,
Defendant–Appellant.**

**No. 19105.**

Supreme Court of Idaho,
Boise, January 1993 Term.

April 19, 1993.

Brauner, Coffel & Young, P.A., Caldwell, for defendant-appellant. William J. Brauner, argued.

Larry EchoHawk, Atty. Gen., Michael A. Henderson, Deputy Atty. Gen., Boise, for plaintiff-respondent. Michael A. Henderson, argued.

TROUT, Justice.

Quincy R. Matteson pleaded guilty to second degree murder in connection with the strangling death of his landlady. Matteson was subsequently sentenced to an indeterminate life term with the first twelve years of the sentence fixed. On appeal, Matteson argues the trial court improperly considered certain information at his sentencing hearing, imposed a sentence which constitutes cruel and unusual punishment, and abused its discretion in not delaying its ruling on a Rule 35 motion until after the court received a psychiatric evaluation report.

## I.

### FACTS

In the early morning hours of February 14, 1990, Matteson telephoned the Caldwell Police Department and reported that he had heard his landlady, Barbara Overman, scream and had seen a man run off behind her house. Matteson lived in a small house behind the house of Mrs. Overman. When the police arrived, Matteson was standing in front of Mrs. Overman's house. The police searched the premises and found the body of Mrs. Overman inside her bedroom. She was found on her bed, lying on her back with an athletic sock tied around her neck. Mrs. Overman's mouth and nose were bloody and the left side of her face was bruised. An autopsy revealed that she died from ligature strangulation.

Matteson later confessed to killing Mrs. Overman. He admitted using a key from a "hide-a-key" box to unlock the back door and enter her home. Matteson claimed he killed Mrs. Overman after he bumped into her bed and she began to scream. Matteson's motive for entering Mrs. Overman's home is unclear from the record.[1] An investigation into Matteson's activities on the night of the murder revealed he ingested cocaine at a party prior to the murder.

Matteson was initially charged with first degree murder. He subsequently pleaded guilty to an amended charge of second degree murder. The presentence investigation report presented to the trial court contained the following notation:

> The defendant's prior documented record reflects two traffic citations in 1986 for Basic Rule and in 1987 for Inattentive Driving. There is no documented history of prior delinquency or criminal activity. However, there has been some mention by the Idaho County Sheriff's Office that the defendant was under investigation for possible cocaine trafficking.

The trial court reviewed various letters it received concerning the sentencing of Matteson as well as a psychological evaluation prepared by Dr. Jack Stoner. The report of Dr. Stoner was prepared after the trial court granted Matteson's motion for an examination by a psychologist to determine whether Matteson was able to understand the proceedings against him and to assist counsel in preparing his defense.

At the sentencing hearing on December 7, 1990, members of Mrs. Overman's family were allowed to testify regarding the impact that the murder of Mrs. Overman had on their lives. A few of these witnesses also recommended what they deemed to be an appropriate sentence and expressed their opinion of the defendant. Matteson was sentenced to an indeterminate life

---

1. The sentencing judge noted that the "defendant's explanation of what he was doing in his land-lady's bedroom was that he had a headache and that he remembered that his mother used to rub his temples and [that] made him feel better."

term with the first twelve years of the sentence fixed.

On January 16, 1991, Matteson filed an I.C.R. 35 motion for a reduction of sentence. The motion specified that Matteson "was sentenced without benefit of a psychiatric examination by a qualified medical doctor psychiatrist, and has arranged to have such an evaluation by an M.D. specializing in Psychiatry, Dr. Michael Estes, to be done on February 21, 1991...." Matteson argued that "further psychiatric evaluation of the defendant would provide the court with more adequate information about the defendant and would indicate that it is unlikely that [he] would be inclined to again commit a crime."

Matteson sought to delay the trial court's ruling on the I.C.R. 35 motion pending the preparation of a written report by Dr. Estes. The trial court initially delayed ruling on the motion to allow Matteson the opportunity to submit the psychiatric report. On September 27, 1991, however, approximately eight months after Matteson filed his motion, the trial court denied the motion without the benefit of Dr. Estes' written report, which had not yet been submitted.

On appeal, Matteson contends the trial court improperly considered prejudicial hearsay contained in the presentence investigation report, improperly considered victim impact statements which went beyond the impact of the crime, imposed a sentence which is disproportionate and constitutes cruel and unusual punishment and abused its discretion by not further delaying its ruling on the I.C.R. 35 motion until after it received Dr. Estes' psychiatric evaluation. Matteson urges this Court to vacate his sentence and remand the case back to the trial court for resentencing. We decline and affirm the sentence imposed.

## II.

### MATTESON WAIVED ANY CHALLENGE HE MAY HAVE HAD TO THE INFORMATION CONTAINED IN THE PRESENTENCE INVESTIGATION REPORT

■ Matteson argues that the notation in the presentence investigation report that

the Idaho County Sheriff's Office made "mention" that Matteson "was under investigation for possible cocaine trafficking" is prejudicial hearsay. He contends the trial court's consideration of this information violates *State v. Mauro*, 121 Idaho 178, 824 P.2d 109 (1991), in which this Court remanded a case for resentencing because of the inclusion of speculative hearsay in the defendant's presentence investigation report. We hold that Matteson failed to preserve this issue for appeal.

■ At the beginning of the sentencing hearing, Matteson was asked by the trial court whether he received the presentence report and had the opportunity to review it with his attorney. Matteson indicated that he had. At no point thereafter did Matteson or his attorney challenge or object to the contents of the presentence investigation report. A defendant, given a reasonable opportunity to review a presentence investigation report prior to sentencing, may not challenge its adequacy for the first time on appeal. *State v. Thacker*, 98 Idaho 369, 370, 564 P.2d 1278, 1279 (1977); *State v. Wallace*, 98 Idaho 318, 320, 563 P.2d 42, 44 (1977).

■ Matteson argues that his failure to object to the contents of the presentence report should not be deemed a waiver of this issue on appeal since the consideration of this information by the trial court constitutes fundamental error. The principle of fundamental error in a criminal case, however, applies to the foundation of a defendant's rights and does not include discretionary, evidentiary rulings by the trial court. *State v. Bingham*, 116 Idaho 415, 423, 776 P.2d 424, 432 (1989). We will not consider the alleged inadequacy of the presentence report in the instant case because of Matteson's failure to object at sentencing to what he deemed impermissible hearsay.

## III.

### THE COMMENTS BY THE VICTIM'S FAMILY AT SENTENCING DID NOT VIOLATE MATTESON'S DUE PROCESS RIGHTS

■ Matteson argues that certain comments made by members of Mrs. Over-

man's family at sentencing deprived him of due process of law. Specifically, Matteson contends the testimony went beyond mere victim impact statements and included the witnesses opinion of Matteson and sentencing recommendations.[2] Matteson argues this testimony exceeded the permissible bounds of victim impact testimony allowed by I.C. § 19–5306[3] and I.C.R. 32(b)(1).[4]

Victim impact statements are permissible and in fact are mandated at sentencing by I.C. § 19–5306 and I.C.R. 32(b)(1). *State v. Searcy*, 118 Idaho 632, 637, 798 P.2d 914, 919 (1990). While I.C.R. 32(b)(1) provides that a presentence report shall contain the victim's version of the offense where relevant to the sentencing decisions, I.C. § 19–5306 provides that a victim of an offense may have included in the presentence report a statement of the impact which the criminal conduct has had on the victim *and* may be afforded the opportunity to address the court at sentencing. I.C. § 19–5306 does not contain any limitations which would prevent a victim of a crime,[5] at sentencing, from sharing the victim's opinion of the defendant or making a sentence recommendation.[6] "When a statute's language is broad enough to include a particular subject matter, an intent to exclude it from the statute's operation must be spe-

cifically expressed." *State v. Michael*, 111 Idaho 930, 932, 729 P.2d 405, 407 (1986).

"The district court has broad discretion in determining what evidence is to be admitted at a sentencing hearing." *State v. Johnson*, 101 Idaho 581, 583, 618 P.2d 759, 761 (1980). It is a " 'fundamental sentencing principle' that 'a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come.' " *Id.* at 584, 618 P.2d at 762, *quoting Roberts v. United States*, 445 U.S. 552, 556, 100 S.Ct. 1358, 1362, 63 L.Ed.2d 622, 628 (1980); *see also State v. Bivens*, 119 Idaho 119, 120, 803 P.2d 1025, 1026 (Ct.App.1991). We find the trial court did not err in allowing the challenged testimony of Mrs. Overman's family.

It should also be noted that the trial court described, in its order denying Matteson's Rule 35 motion, the manner in which it considered the victim's statements:

In his Rule 35 motion, the defendant complains of the victim testimony produced at the sentencing hearing in this case, and argues that it unfairly prejudiced the court. This fear on the part of the defendant is unfounded.... One of the witnesses offered an opinion as to the punishment to be handed down. The

---

**2.** The testimony by members of Mrs. Overman's family at sentencing included comments concerning the witnesses opinion of Matteson, "a person who in my opinion has no right to be called a man," and sentencing, "[i]t's a good thing I am not his judge and jury for he would be sentenced to death," "the years that [Matteson] took away from my mother should be the same amount of time that is taken away from him."

**3.** I.C. § 19–5306 provides in pertinent part:
(1) Upon request, each victim of a felony offense shall be:

. . . . .

(b) Consulted by the presentence investigator during preparation of the presentence report and have included in that report a statement of the impact which the defendant's criminal conduct has had on the victim;
(c) Afforded the opportunity to address under oath, the court at sentencing;

. . . . .

**4.** I.C.R. 32(b)(1) provides that a presentence report shall contain:

The description of the situation surrounding the criminal activity with which the defendant has been charged, including the defendant's version of the criminal act and his explanation for the act, the arresting officer's version or report of the offense, where available, *and the victim's version, where relevant to the sentencing decision.*
(Emphasis added.)

**5.** Victim, as used above, includes the immediate family of the actual victim in homicide cases. I.C. § 19–5304(1)(e).

**6.** We note that the breadth of I.C. § 19–5306 may be limited in those cases in which the death penalty is imposed. *See Payne v. Tennessee*, —— U.S. ——, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). We are not presented with that issue in the instant case.

court did not consider it in any way in determining punishment.... The court only viewed such testimony as a measure of how badly the witness was doing at coping with the victim's death.

Thus, while our holding here today permits the type of testimony which Matteson now challenges, the above passage makes it clear that the trial court did not place any emphasis on the statements regarding sentencing. *See State v. Card*, 121 Idaho 425, 433–34, 825 P.2d 1081, 1089–90 (1991).

## IV.

## MATTESON'S SENTENCE DOES NOT CONSTITUTE CRUEL AND UNUSUAL PUNISHMENT

■ Matteson argues the sentence imposed by the trial court is so out of proportion to the gravity of the offense committed that it constitutes cruel and unusual punishment under our state and federal constitutions.[7] We disagree.

This Court recently analyzed the standard by which we determine whether a sentence constitutes cruel and unusual punishment under our federal constitution. In *State v. Brown*, 121 Idaho 385, 825 P.2d 482 (1992), we recognized that the three-step proportionality analysis under the Eighth Amendment, as dictated by *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), had been modified by *Harmelin v. Michigan*, — U.S. —, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). We held that before assessing the proportionality of a sentence under the Eighth Amendment, "we first must make a threshold comparison of the crime committed and the sentence imposed to determine whether the sentence leads to an inference of gross disproportionality." 121 Idaho at 394, 825 P.2d at 491. "[I]ntra-· and inter-jurisdictional analyses are appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to any inference of gross disproportionality." *Harmelin*, — U.S. at —, 111 S.Ct. at 2707, 115 L.Ed.2d at 871 (Kennedy, J., concurring).

■ We first consider the sentence imposed. A trial court, when sentencing a person convicted of a felony under the Unified Sentencing Act, must specify a minimum period of confinement—the fixed portion of the sentence—which may be followed by an indeterminate period of confinement. I.C. § 19–2513; *State v. Broadhead*, 120 Idaho 141, 146, 814 P.2d 401, 406 (1991), *overruled on other grounds by State v. Brown*, 121 Idaho at 394, 825 P.2d at 491. Matteson was sentenced to an indeterminate life sentence with the first twelve years of his sentence fixed. We treat the fixed portion of a sentence as the term of confinement for purposes of appellate review. *State v. Kysar*, 116 Idaho 992, 999, 783 P.2d 859, 866 (1989). Thus, Matteson's term of confinement, for purposes of our analysis, is twelve years.

We do not find, after reviewing all the facts and circumstances of the case, that Matteson's sentence of twelve years leads to an inference of gross disproportionality. Matteson brutally beat and strangled his landlady to death after surreptitiously entering her house in the middle of the night. Matteson had no apparent motive for killing Mrs. Overman let alone for entering the sanctity of her home. There is no evidence to suggest Matteson was provoked, acted in self defense or acted in response to any action by Mrs. Overman other than her waking up and screaming while he prowled inside her home. For all intents and purposes, this was truly a senseless killing and certainly not one of those "rare" cases in which the crime committed and the sentence imposed leads to an inference of gross disproportionality.

We next address whether Matteson's twelve-year sentence is cruel and unusual punishment under out state constitution. In *Brown:*

[w]e limit[ed] our proportionality analysis to death penalty cases and, under the Idaho Constitution as contemplated in *State v. Evans,* to those cases which are "out of proportion to the gravity of the

---

7. Matteson supports his proportionality argument by comparing the sentence in the instant case to other sentences imposed by courts in Canyon County.

offense committed" in the cruel and unusual punishment setting similar to the "grossly disproportionate" analysis of the eighth amendment urged by Justices Kennedy, O'Conner, and Souter in *Harmelin.*

121 Idaho at 394, 825 P.2d at 491.

In *State v. Evans,* 73 Idaho 50, 58, 245 P.2d 788, 792 (1952), the Court held that a sentence is cruel and unusual punishment under our state constitution only when it is "out of all proportion to the gravity of the offense committed, and such as to shock the conscience of reasonable [people]...." *See Broadhead,* 120 Idaho at 148, 814 P.2d at 408. We conclude in the instant case that Matteson's sentence of twelve years is not out of all proportion to the gravity of the offense committed, nor is the sentence so severe as to shock the conscience of reasonable people.

## V.

### THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY REFUSING TO FURTHER DELAY ITS RULING ON MATTESON'S I.C.R. 35 MOTION

■ Matteson argues the trial court abused its discretion by refusing to further delay its ruling on his Rule 35 motion until after it received the Estes' psychiatric report. Matteson contends he was denied an opportunity to refute the psychological evaluation prepared by Dr. Stoner and relied on by the trial court at sentencing. We hold the trial court properly exercised its discretion in refusing to further delay its ruling on Matteson's motion.

■ We vest our trial courts with the sound discretion to grant or deny continuances. *State v. Ward,* 98 Idaho 571, 574, 569 P.2d 916, 919 (1977). Interposed in this discretion is the requirement that a trial court must rule on a Rule 35 motion within a reasonable period of time or risk losing jurisdiction of the matter. In *State v. Chapman,* 121 Idaho 351, 354, 825 P.2d 74, 77 (1992), we held the district court's delay of over two years in ruling on a Rule 35 motion was unreasonable and deprived the court of jurisdiction to grant the motion.

In the present case, the trial court delayed its ruling on the Rule 35 motion for eight months from the time of filing the motion. The trial court was not obligated to wait indefinitely for Matteson to procure the report and risk losing jurisdiction. We hold the trial court did not abuse its discretion in refusing further delay on its ruling.

## VI.

## CONCLUSION

We affirm the sentence imposed by the trial court.

McDEVITT, C.J., BISTLINE and JOHNSON, JJ., and REINHARDT, District Judge Pro Tem., concur.