962 P.2d 399

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Michael OLIVERA, Defendant–Appellant.**

**No. 23710.**

Court of Appeals of Idaho.

July 1, 1998.

Lynn, Scott, Hackney & Jackson, Boise, for Defendant-Appellant.

Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for Plaintiff-Respondent.

LANSING, Chief Judge.

In this appeal Michael Olivera challenges the unified twenty-five-year sentence with a

fifteen-year minimum term of imprisonment that was imposed upon his plea of guilty to a charge of second degree kidnapping. We affirm.

In May 1995, when Olivera was seventeen years old, he was staying at a cabin in the Paddy Flats area of Valley County along with several other youths, Ryan Robertson, Chad Toney, Samantha Anglin, and Ean Barnett. Eighteen-year-old Jeffrey Towers was also with the group. On the night of May 24, 1995, all five of the young men left the cabin, apparently planning to burglarize other cabins in the area. Robertson, Toney, and Olivera each carried a gun. Towers was unarmed. As the group was walking through the woods, Robertson instructed Barnett to tie Towers' hands. Barnett did so with Toney's assistance. Barnett also produced a dog collar and made Towers wear it. Barnett then pulled Towers with a twine or rope tied to the collar. As they walked, Robertson and Toney struck Towers in the back of the head with their guns, causing him to bleed. The group stopped at a puddle and forced Towers to kneel down and drink from it. When Robertson asked Towers what he would do to get out of the situation, he responded that he would do anything. Laughing, Olivera asked Towers if he would perform oral sex on Olivera. Towers indicated that he would, but Olivera told Towers he would not allow Towers to perform that act.

They walked about one and a half miles into the woods along an abandoned logging road. As they walked, Barnett caused Towers to stumble over fallen trees which crossed their path. The group stopped at a stream and one man pushed Towers into the water. While Towers was in the stream, Barnett fired shots around Towers' feet. Towers appeared to be cold, and Robertson instructed Barnett to bring him out of the water. Robertson, Toney, Barnett and Olivera then stood in a circle near Towers and discussed whether to leave Towers in the woods or take him back to the cabin. Suddenly, Robertson stepped away from the group, placed his handgun against Towers'

head and fired. When Towers collapsed to the ground, Robertson shot him again. Each of the others, including Olivera, then took turns firing shots into Towers' dead body. They dragged the body about ten feet off the trail and covered it with leaves. They picked up those shell casings that they could see in the moonlight and threw them in the stream. In addition, they threw dirt over the blood in the road. The four then walked back to the cabin where they discussed what to do with Towers' body. After deciding to burn it the next day, they went to sleep.

The following day, the group arose mid-morning and ate breakfast. The young men and Anglin then returned to the scene with lantern fuel, a shovel, and gloves. Some of the individuals dug a grave while others gathered wood. They dragged Towers' body into a shallow grave, covered it with wood and fuel, and burned it. They stayed to tend the fire for at least two hours before returning to the cabin. Before departing the cabin to go home, these individuals agreed to claim that they last saw Jeffrey Towers boarding a bus in the nearby town of Donnelly.

Approximately six months later, police discovered Towers' grave, and charges were filed against all of the young men and Anglin. Olivera was initially charged with first degree murder. Pursuant to a plea agreement, however, he subsequently pleaded guilty to second degree kidnapping.[1] After a lengthy sentencing hearing, Olivera was given a unified sentence of twenty-five years' imprisonment with a fifteen-year minimum term.

On appeal, Olivera contends that his sentence is excessive and violates constitutional prohibitions against cruel and unusual punishment.

## ANALYSIS

### A. Sentence Review

Olivera contends that his sentence is unduly harsh and represents an abuse of the district court's discretion. Olivera argues that he should have received a lesser sen-

---

1. As part of the plea agreement, Olivera waived any right to be prosecuted and sentenced as a juvenile.

tence because he had no role in the murder of Jeffrey Towers and played only a passive role in the kidnapping. Olivera claims that he fired shots into Towers' body and participated in the disposal of the body and the subsequent cover-up of the murder out of fear that the others, particularly Robertson and Barnett, would kill him if he did not assist them.

In imposing sentence, the district court noted that Olivera participated in a kidnapping that ended with the death of the kidnapping victim. Nonetheless, the court also recognized that Olivera had a very minor criminal record and that he appeared to be remorseful. Because of these mitigating factors, the district court determined that Olivera would have a chance to prove his potential for rehabilitation by being eligible for parole in fifteen years.

For the crime to which he pleaded guilty, Olivera was subject to a maximum sentence of twenty-five years. I.C. § 18–4504(2). The sentence he received is within this statutory limit and we therefore review the sentence for an abuse of discretion. *State v. Brown,* 121 Idaho 385, 393, 825 P.2d 482, 490 (1992); *State v. Wolfe,* 99 Idaho 382, 384, 582 P.2d 728, 730 (1978). We treat the minimum period specified by the sentencing judge as the probable duration of confinement. *State v. Martinsen,* 128 Idaho 472, 475, 915 P.2d 34, 37 (Ct.App.1996); *State v. Sanchez,* 115 Idaho 776, 769 P.2d 1148 (Ct. App.1989). A sentence may represent an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice,* 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence is not an abuse of discretion if it appears at the time of sentencing that the confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *State v. Toohill,* 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982). If reasonable minds might differ as to the appropriateness of the sentence, we will not substitute our view for that of the trial court. *Brown,* 121 Idaho at 393, 825 P.2d at 490; *State v. Admyers,* 122 Idaho 107, 108, 831 P.2d 949, 950 (Ct.App.1992). When reviewing a sentence that an appellant challenges as being excessive, we conduct an independent review of the record, giving attention to the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Anderson,* 119 Idaho 204, 206, 804 P.2d 933, 935 (Ct. App.1991); *State v. Reinke,* 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct.App.1982).

Considering the nature of the crime and Olivera's character, as exemplified by his conduct and the circumstances surrounding the offense, we cannot say the district court abused its discretion in imposing a minimum fifteen-year term of incarceration. We acknowledge that Olivera's behavior leading up to the murder of Jeffrey Towers was less abhorrent than that of other participants. It was Robertson who initiated and directed the kidnapping and who fired the first shots at Jeffrey Towers.[2] However, Olivera participated in degrading and humiliating Towers. He stood by and raised no objection while others beat Towers. He made vulgar jokes at Towers' expense. As the district court pointed out, among the group of participants, Olivera was Robertson's closest friend and, as such, was in the best position to have intervened and dissuaded Robertson from continuing with the course of violence and degradation that culminated in Towers' death. Olivera did not express any objection or revulsion after witnessing Robertson's sudden and inexplicable murder of Towers. To the contrary, he calmly fired two shots into the corpse. He then actively participated in disposing of Towers' body and other evidence of the crime. He did not report the murder to authorities. Even when confronted by the police, he initially denied any knowledge of the murder. During his eventual confession, police described his demeanor as "casual," "relaxed," and "unemotional."

Olivera's contention that his failure to come to Towers' aid or to report the crime was the product of fear for his own safety is

---

**2.** On his conviction for second degree murder, Robertson was given an indeterminate life sentence with a twenty-five year minimum term of imprisonment. *See State v. Robertson,* 130 Idaho 287, 939 P.2d 863 (Ct.App.1997).

belied by the circumstances. Olivera was armed at the time of the kidnapping and murder. He was also best friends with Robertson, the most aggressive participant and purported leader of the group. After returning home to Boise, Olivera moved into an apartment with Robertson and remained close friends with him. This behavior hardly supports Olivera's assertion that he feared Robertson.

We conclude that given Olivera's involvement in the kidnapping and the subsequent concealment of the murder, the sentence imposed does not represent an abuse of the district court's discretion.

## B. Rule 35 Review

■ A motion to reduce a sentence pursuant to Idaho Criminal Rule 35 is essentially a request for leniency which may be granted if the sentence imposed was unduly severe. *State v. Brydon,* 121 Idaho 890, 892, 828 P.2d 919, 921 (Ct.App.1992); *State v. Forde,* 113 Idaho 21, 22, 740 P.2d 63, 64 (Ct.App.1987). If the sentence is not excessive when imposed, the defendant must show that it is excessive in view of new or additional information presented with the motion to reduce the sentence. *State v. Springer,* 122 Idaho 544, 545, 835 P.2d 1355, 1356 (Ct.App.1992); *State v. Caldwell,* 119 Idaho 281, 284, 805 P.2d 487, 490 (Ct.App.1991). We review the trial court's decision applying the same factors used in determining whether the original sentence was unreasonable. *State v. Lopez,* 106 Idaho 447, 450, 680 P.2d 869, 872 (Ct. App.1984).

■ Olivera made a Rule 35 motion based upon evidence that Toney lied during the sentencing hearing when he stated that Olivera threatened to kill him if he discussed the murder with anyone. The district court denied the motion without a hearing, stating in its memorandum and order that, "Regardless of the truth or falsity of [Toney's] statements, they had no impact on the court's sentencing decision." On appeal to this court Olivera has not presented any substantive argument to refute the district court's statement that it was not influenced by the allegedly perjurious testimony at the sentencing hearing. Because we have concluded that the sentence was reasonable without regard to Toney's statements, we cannot say that the denial of the motion was an abuse of discretion.

## C. Cruel and Unusual Punishment

■ Olivera also contends that his sentence constituted cruel and unusual punishment prohibited by the Eighth Amendment to the United States Constitution. To address this constitutional challenge, we must first make a threshold comparison of the crime committed and the sentence imposed to determine whether the sentence leads to an inference of gross disproportionality. *State v. Matteson,* 123 Idaho 622, 626, 851 P.2d 336, 340 (1993); *Brown,* 121 Idaho at 394, 825 P.2d at 491; *State v. Moore,* 127 Idaho 780, 783, 906 P.2d 150, 153 (Ct.App. 1995). This "grossly disproportionate" test is equivalent to the standard under the Idaho Constitution enunciated in *State v. Evans,* 73 Idaho 50, 245 P.2d 788 (1952), which focuses upon whether the punishment is "out of proportion to the gravity of the offense committed, and such as to shock the conscience of reasonable [people]." *Brown, supra.* If an inference of such disproportionality is found, we must conduct a proportionality analysis comparing Olivera's sentence to those imposed on other defendants for similar offenses. *Id.; Matteson, supra.* For purposes of this analysis, we treat the fixed portion of the sentence, fifteen years, as the term of confinement. *Id.* Thus, our first inquiry is whether Olivera's sentence is out of proportion to the gravity of his crime. If this Court finds that the sentence is out of proportion to the offense, a comparison with sentences from this and other jurisdictions is appropriate.

■ We conclude that Olivera's sentence was not grossly disproportionate to the crime he committed. Olivera admits to participating in a kidnapping during which the victim was beaten, humiliated and murdered. For the same reasons that we have held the sentence to be reasonable, we conclude that a minimum term of fifteen years' imprisonment is not grossly disproportionate to the crime committed or such as would shock the conscience of reasonable people. Therefore, we

**633**

need not engage in a comparison of Olivera's sentence to those imposed in other cases for similar offenses.

## CONCLUSION

Neither the sentence nor the denial of Olivera's Rule 35 motion was an abuse of discretion, and the sentence does not constitute cruel and unusual punishment. We affirm the district court's judgment of conviction and the unified sentence of twenty-five years' imprisonment with fifteen years determinate for second degree kidnapping.

PERRY and SCHWARTZMAN, JJ., concur.