**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 46495**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: December 18, 2019** |
| Plaintiff-Respondent, | ) |
| | ) **Karel A. Lehrman, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| GUI MARCUS BRISBO, aka GUY | ) **OPINION AND SHALL NOT** |
| MARCUS BRISBO, | ) **BE CITED AS AUTHORITY** |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Steven J. Hippler, District Judge.

Judgment of conviction and unified sentence of ten years with two years determinate for aggravated battery, <u>affirmed</u>.

Paul E. Riggins, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

_____

BRAILSFORD, Judge

Gui Marcus Brisbo appeals from his judgment of conviction after the jury found him guilty of aggravated battery in violation of Idaho Code §§ 18-903(b), 18-907(a). Brisbo also appeals his sentence. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

On the evening of January 11, 2018, the police responded to a fight at Rhodes Skate Park in Boise, Idaho. According to evidence presented at trial, witnesses told police they heard yelling from across the park and saw a man, later identified as Brisbo, swinging his fists toward the victim, who was backing away with his arms and hands raised in a defensive position. Brisbo hit the victim twice on the arm and once in the face. When Brisbo punched the victim in

1

the face, he fell against a metal trash can and onto the ground. While he was lying face down on the ground, Brisbo kicked and stomped on the victim's head and neck several times. One of the witnesses yelled at Brisbo to stop and called 9-1-1. When the police arrived, the victim was still lying on the ground being treated by paramedics.

The police detained Brisbo, who told them that the victim, along with a group of four or five other men, attacked Brisbo's older male relative and that Brisbo intervened to protect the older man.[1] Brisbo admitted to punching the victim in the face in defense of Brisbo and his male relative but denied kicking or stomping on the victim. The officers testified Brisbo and his male relative appeared to have no visible injuries but did not conduct a further examination.

The State charged Brisbo with aggravated battery. The State's evidence included the testimony of two police officers; the testimony of the witness who called 9-1-1; the testimony of the emergency room doctor who examined and treated the victim; and photographs of the pool of blood where the victim was found, of the victim's injuries after the incident, and of Brisbo's shoe, which he was wearing when arrested and which had a smear of what appeared to be blood on it.

A jury found Brisbo guilty of aggravated battery. The district court entered a judgment of conviction and sentenced him to a unified sentence of ten years with two years determinate. Brisbo timely appeals both his judgment of conviction and his sentence.

## II.
## ANALYSIS

### A.      Sufficiency of Evidence

Brisbo argues the doctor's testimony regarding the victim's injuries was insufficient to show "great bodily harm" necessary to support a conviction for aggravated battery. Appellate review of the sufficiency of the evidence is limited in scope. A finding of guilt will not be overturned on appeal where there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Herrera-Brito*, 131 Idaho 383, 385, 957 P.2d 1099,

---

[1]      The nature of the relationship between Brisbo and his male relative is unclear. Brisbo introduced the man to one officer as his "grandpa" but as his "uncle" to another officer. In his brief on appeal, Brisbo refers to the man as his "uncle." Also, the record suggests Brisbo's relation to the man may have been based on a shared Native American tribal heritage.

1101 (Ct. App. 1998); *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct. App. 1991). We will not substitute our view for that of the trier of fact as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Knutson*, 121 Idaho at 104, 822 P.2d at 1001; *State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct. App. 1985). Moreover, we will consider the evidence in the light most favorable to the prosecution. *Herrera-Brito*, 131 Idaho at 385, 957 P.2d at 1101; *Knutson*, 121 Idaho at 104, 822 P.2d at 1001.

To convict Brisbo on aggravated battery, the State had to prove he struck or kicked the victim causing him "great bodily harm." *See* I.C. § 18-907(a) (defining aggravated battery to include "great bodily harm"). "[A]ggravated battery does not require any intent to cause great bodily harm." *State v. Carver*, 155 Idaho 489, 494, 314 P.3d 171, 176 (2013). Rather, "[a] battery becomes aggravated battery because of the harm caused, not because of the intent to cause that harm." *Id.* The Idaho Supreme Court has held that the phrase "great bodily harm" means "the injuries inflicted are in nature more serious than that which would result from a simple battery" and that the phrase unambiguously "enable[s] a person of common understanding to know what is intended." *State v. Clark*, 115 Idaho 1056, 1058, 772 P.2d 263, 265 (Ct. App. 1989) (quoting *State v. McKeehan*, 91 Idaho 808, 815, 430 P.3d 886, 893 (1967)).

The treating doctor testified that his report indicated the victim had swelling, contusions, and bruising in multiple spots on his face; had dried blood on his face; had a laceration above his right eye; had swelling around his lips; had abrasions; and had a loose front tooth. Further, the doctor testified a computer tomography scan (CT scan) showed a fracture to the tip of the victim's nose and a concussion. On appeal, Brisbo concedes his actions caused the victim's injuries of "swelling, bruising, abrasions and [a] cut above the right eye," but he argues the victim's "nose injury . . . was not affirmatively connected to [his] actions."

Considering the evidence in the light most favorable to the prosecution, we disagree with Brisbo's assertion that the jury could not have attributed the victim's nose fracture to Brisbo's conduct. While the doctor could not conclusively state whether the nose fracture was a recent injury or prior injury, he testified that generally the radiologist would note whether the CT scan showed a "chronic facture" and that the records did not state the victim's nose fracture was a chronic fracture, thereby suggesting the fracture was recent. Based on this evidence, the jury

3

could have reasonably concluded that the victim's nose fracture was recent and that Brisbo caused the fracture.

Moreover, Brisbo's argument about the victim's nose fracture ignores other evidence indicating Brisbo caused the victim great bodily harm. This additional evidence includes, for example, the victim's concussion; his loose tooth; and the photographs of the victim's injuries, of the amount of blood on the ground, and of Brisbo's shoe, with what appears to be blood on it. These photographs, along with the doctor's testimony about the victim's injuries, constitute substantial evidence on which the jury could have found the prosecution sustained its burden of proving Brisbo caused the victim great bodily harm.

Related to Brisbo's argument that insufficient evidence supports his conviction, he also challenges what he characterizes as "an entire host of problems and inconsistencies" in the case. Many of these purported "inconsistencies" relate to the testimony of the witness who called 9-1-1. According to Brisbo, the witness testified inconsistently with his 9-1-1 call and the video the witness took of the incident. Brisbo claims these inconsistencies include whether the fight was "mutual combat"; whether "just fists" were involved or also "kicking or stomping"; whether Brisbo made "several swings" or only three "hits"; and whether the victim was "conscious and alert" or "limp and . . . non-responsive." Brisbo also notes that the witness "did not witness the beginning of the incident";[2] the police officers "only spent a few minutes" with Brisbo, did not examine him, did not examine Brisbo's male relative, and failed to interview other witnesses; the victim never testified; and the blood on Brisbo's shoe was only a "smear" and may have been his own blood.

That certain evidence may have been conflicting or circumstantial, however, is not a basis to conclude the evidence was insufficient to convict Brisbo. Substantial evidence may exist even when the evidence presented is solely circumstantial or when there is conflicting

---

[2] Regarding the fact that the witness did not see the beginning of the incident, Brisbo argues the witness "had no idea whether [Brisbo] was acting in self-defense." However, "[a] battery cannot be justified as self-defense or defense of another after any threat from the victim has subsided and resistance from the defendant has become unnecessary." *State v. Hernandez*, 133 Idaho 576, 585, 990 P.2d 742, 751 (Ct. App. 1999). In this case, the jury was properly instructed that "when there is no longer any reasonable appearance of danger, the right of self-defense [or] defense of another ends." The witness testified Brisbo kicked the victim even after he had fallen to the ground. Accordingly, the jury could have concluded Brisbo was not acting in self-defense or the defense of another regardless of the fact that the witness did not see the beginning of the incident.

evidence. *State v. Severson*, 147 Idaho 694, 712, 215 P.3d 414, 432 (2009); *State v. Stevens*, 93 Idaho 48, 50-51, 454 P.2d 945, 947-48 (1969). In fact, even when circumstantial evidence could be interpreted consistently with a finding of innocence, it will be sufficient to uphold a guilty verdict when it also gives rise to reasonable inferences of guilt. *Severson*, 147 Idaho at 712, 215 P.3d at 432; *State v. Slawson*, 124 Idaho 753, 757, 864 P.2d 199, 203 (Ct. App. 1993). "Where there is competent evidence to sustain the verdict, we will not reweigh the evidence or disturb the verdict." *State v. Rogerson*, 132 Idaho 53, 58, 966 P.2d 53, 58 (Ct. App. 1998). Based on these principles, we hold that substantial evidence supports the jury's finding that Brisbo was guilty of aggravated battery, and we decline to reweigh the evidence.

**B.      Sentencing**

Brisbo argues the district court abused its discretion by imposing an excessive sentence for aggravated battery. An appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

Where a sentence is not illegal, the appellant has the burden to show it is unreasonable and thus a clear abuse of discretion. *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation, or retribution applicable to a given case. *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007).

Brisbo acknowledges his sentence is within the statutory limits but argues the district court abused its discretion by not considering mitigating factors in this case. One mitigating factor Brisbo identifies is that he does not have any prior felony convictions. Regardless, he has a significant criminal history with over fifty misdemeanor convictions. As the district court noted, several of Brisbo's misdemeanors involved violence, resisting arrest, disorderly conduct, obstructing a police officer, and alcohol abuse.

The cases Brisbo cites for the proposition that the absence of a prior felony conviction is a mitigating factor are distinguishable: each involves a defendant with either no prior criminal history or a history of minor traffic infractions. *See State v. Shideler*, 103 Idaho 593, 595, 651 P.2d 527, 529 (1982) ("This was the defendant's first felony with no prior history of any criminal activity and this court has recognized that the first offender should be accorded more lenient treatment than the habitual criminal.") (internal quotations omitted); *Nice*, 103 Idaho at 90-91, 645 P.2d at 324-25 ("Other than public intoxication and driving while intoxicated, the defendant's prior record consists solely of traffic offenses . . . [and] this was the defendant's first felony."); *Cook v. State*, 145 Idaho 482, 489-90, 180 P.3d 521, 528-29 (Ct. App. 2008) ("We find it notable that prior to his convictions in federal court for his involvement in the same scheme . . . at issue here, Cook had no prior criminal record."); *State v. Carrasco*, 114 Idaho 348, 354-55, 757 P.2d 211, 217-18 (Ct. App. 1988) (Burnett, J., concurring in part and dissenting in part) ("In our view, these sentences represent an unduly harsh sanction for an individual who--so far as the record shows--has no prior criminal record."), *rev'd on other grounds*, 117 Idaho 295, 301, 787 P.2d 281, 287 (1990). In contrast to these cases, Brisbo has, as he concedes, "a significant prior history" of criminal activity, and the district court properly considered that history.

Likewise, the district court also considered the nature of the injuries Brisbo caused the victim and Brisbo's claim that he was "acting in the defense of others." Specifically, the district court noted that Brisbo "violently beat [the] victim, including while the victim was on the ground and defenseless, by kicking him in the head resulting in significant and serious injuries to the victim." The record supports the district court's comment and contradicts Brisbo's claims that his conduct did not produce substantial injuries and that he was acting in the defense of others.

Finally, Brisbo's claim that his sentence constitutes cruel and unusual punishment under the Eighth Amendment to the United States Constitution is without merit. When reviewing

6

whether a sentence imposed under the Uniform Sentencing Act constitutes cruel and unusual punishment, this Court treats the minimum period of incarceration as the duration of confinement. *State v. Matteson*, 123 Idaho 622, 626, 851 P.2d 336, 340 (1993); *State v. Daniel*, 127 Idaho 801, 804, 907 P.2d 119, 122 (Ct. App. 1995). Therefore, the Court will analyze only whether the fixed portion of the sentence violates the state and federal constitutions.

To address this constitutional challenge, we must first make a threshold comparison of the crime committed and the sentence imposed to determine whether the sentence leads to an inference of gross disproportionality. *Matteson*, 123 Idaho at 626, 851 P.2d at 340; *Brown*, 121 Idaho at 394, 825 P.2d at 491; *State v. Olivera*, 131 Idaho 628, 632, 962 P.2d 399, 403 (Ct. App. 1998). This gross disproportionality test is equivalent to the standard under the Idaho Constitution which focuses upon whether the punishment is out of proportion to the gravity of the offense committed and such as to shock the conscience of reasonable people. *Brown*, 121 Idaho at 394, 825 P.2d at 491. If an inference of such disproportionality is found, we must conduct a proportionality analysis comparing the sentence to those imposed on other defendants for similar offenses. *Matteson*, 123 Idaho at 626, 851 P.2d at 340; *Olivera*, 131 Idaho at 632, 962 P.2d at 403. The burden of demonstrating that a sentence is cruel and unusual is on the person asserting the constitutional violation. *State v. Clay*, 124 Idaho 329, 332, 859 P.2d 365, 368 (Ct. App. 1993). Applying these standards and having reviewed the record in this case, we cannot say that Brisbo's sentence constitutes cruel and unusual punishment.

Based on an independent review of the record, Brisbo has failed to show the district court abused its discretion. We conclude that the district court properly considered the objectives of sentencing and the relevant mitigating factors and that the term of imprisonment ordered by the district court is not excessive.

## III.

## CONCLUSION

Sufficient evidence was presented at trial to support Brisbo's conviction for aggravated battery. Further, the district court did not abuse its discretion by sentencing Brisbo to ten years with two years determinate or violate his Eighth Amendment rights. Accordingly, Brisbo's judgment of conviction and sentence are affirmed.

Judge HUSKEY and Judge LORELLO **CONCUR**.