**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 46015**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: February 20, 2020** |
| Plaintiff-Respondent, | ) |
| | ) **Karel A. Lehrman, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| RICHARD GENE VICTORY, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Richard D. Greenwood, District Judge.

Judgment of conviction and unified sentences of ten years with five years determinate for each count of aggravated assault, affirmed.

Paul E. Riggins, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jeffery D. Nye, Deputy Attorney General, Boise, for respondent.

_____

BRAILSFORD, Judge

Richard Gene Victory appeals both his judgment of conviction for two counts of aggravated assault in violation of Idaho Code §§ 18-901(b), 18-905(a) and his sentences. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

At trial, the State presented evidence of the following: One evening in July 2017, a mother (Mother), her daughter (Daughter), and Daughter's boyfriend were in Daughter's bedroom attempting to fix a broken chair. Victory, who was a friend of Mother's, entered Daughter's bedroom unexpectedly. He was angry, agitated, and confrontational. Victory demanded that Daughter return to him Xanax and marijuana, which he claimed Daughter had taken from him. Victory pulled a knife with a three-inch blade out of his pocket and made

1

numerous threatening statements about cutting and killing Daughter and Mother. According to witnesses, these statements included: "I can end you all. You don't even know what I'm capable of"; "I can kill you. I know how to use this knife"; and "I know how to cut you guys up and put you in a freezer." Mother testified that Victory stated that "he was going to take [Daughter and her] out" and that "he was going to cut [them] up into little pieces and put [them] in barrels."

During this confrontation, Mother and another individual who had entered the bedroom, Allan, stood between Victory and Daughter to protect Daughter. At one point, Victory lunged at Mother with the knife but Allan blocked Victory, and as a result, he cut Allan's wrist. Eventually, Mother was able to convince Victory to leave Daughter's bedroom. After Victory left, Daughter and her boyfriend locked themselves in the bedroom, and Daughter called 9-1-1.

When the police arrived in response, Victory was standing at the top of the stairs and holding what appeared to be a knife. When the police asked Victory to drop the knife, he shouted expletives at them and threw a pair of scissors and a belt down the stairs at the officers. After Victory walked down the stairs, the police told him to lie down but he refused. As a result, the police wrestled him to the ground and handcuffed him. A search of Victory revealed he had "a silver folding knife, approximately, three to four inches long in his back right pocket."

As a result of this confrontation, the State charged Victory with aggravated battery of Allan, aggravated assault of Mother, aggravated assault of Daughter, and resisting and obstructing an officer. At trial, Mother, Daughter, Daughter's boyfriend, and several police officers testified. Additionally, the State admitted photographs of the cut on Allan's wrist and the knife found in Victory's pocket after his arrest.

A jury found Victory guilty of simple battery of Allan, aggravated assault of both Mother and Daughter, and resisting and obstructing an officer. As it relates to this appeal, the district court imposed concurrent unified sentences of ten years with five years determinate for each count of aggravated assault. Victory timely appeals from his judgment of conviction for aggravated assault of Mother and of Daughter and his sentences for aggravated assault.

ANALYSIS

A.     **Sufficiency of Evidence**

On appeal, Victory argues there is insufficient evidence to support his conviction that he committed aggravated assault of Mother and of Daughter. Appellate review of the sufficiency of the evidence is limited in scope. A finding of guilt will not be overturned on appeal where there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Herrera-Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct. App. 1998); *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct. App. 1991). We will not substitute our view for that of the trier of fact as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Knutson*, 121 Idaho at 104, 822 P.2d at 1001; *State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct. App. 1985). Moreover, we will consider the evidence in the light most favorable to the prosecution. *Herrera-Brito*, 131 Idaho at 385, 957 P.2d at 1101; *Knutson*, 121 Idaho at 104, 822 P.2d at 1001.

To prove Victory guilty of aggravated assault, the State had to prove Victory committed an assault with a deadly weapon or instrument. To prove an assault, the State had to prove that Victory "intentionally and unlawfully threaten[ed] by word or act to do violence to [Mother and to Daughter], with an apparent ability to do so, and [did] some act which created a well-founded fear in [both Mother and Daughter] that such violence [was] imminent." Idaho Criminal Jury Instruction 1201(2). A "deadly weapon or instrument" is "one likely to produce death or great bodily injury. It also includes any object that is capable of being used in a deadly or dangerous manner if the person intends to use it as a weapon." I.C.J.I. 1206. This Court has previously ruled that "a pocket knife may be a deadly weapon, depending on the circumstances of its use." *State v. Lenz*, 103 Idaho 632, 634, 651 P.2d 566, 568 (Ct. App. 1982).

Victory argues the State did not present sufficient evidence that Mother and Daughter had a well-founded fear of Victory's imminent violence. In support, Victory points to Mother's and Daughter's testimony that neither believed Victory intended to hurt anyone. Mother testified that Victory was a friend who was allowed to "just come in" to her home and with whom she felt "safe"; initially, she thought he might be joking; and she did not think Victory meant to hurt either her or Daughter. Similarly, Daughter testified that she did not "think [Victory] had

intentions to really cut anybody"; she did not "think he had a specific person that he was lunging towards"; and she did not "necessarily think that his intention was to come in and hurt anybody."

Both Mother and Daughter, however, testified that they feared Victory was going to cut them. On direct examination, Mother testified:

> Q.   Did [Victory] threaten you with the knife?
> A.   Yeah, then it became a threat to me.
> . . . .
> Q.   Were you scared?
> A.   I began to get very scared, yes. . . .
> Q.   Were you afraid that based on his threats and his actions, he might cut you?
> A.   Yes, sir.

Further, Mother clarified on redirect that although she did not think Victory wanted to hurt anyone, she feared he was going to hurt her:

> Q.   [Y]ou testified that you didn't think that [Victory] wanted to hurt anyone that night.
> A.   Correct.
> Q.   But that doesn't mean that you weren't afraid that he was going to hurt you.
> A.   Correct.

Daughter also testified about her fear on direct:

> Q.   [B]ased on [Victory's] behavior with the knife and his threats, were you afraid that he might cut you?
> A.   Yes.

Further, she clarified on redirect that, although she did not think Victory intended hurt anyone initially, she began to fear him:

> Q.   [W]ould it be fair to say that initially you didn't think he was going to hurt someone, but then it developed into a fear[?]
> A.   Yes.

Considering the evidence in the light most favorable to the prosecution, we hold that the jury's finding that Victory is guilty of aggravated assault of Mother and of Daughter is supported by substantial evidence and that a reasonable trier of fact could have found the State proved both Mother and Daughter had a well-founded fear of Victory's imminent violence. *See Herrera-Brito*, 131 Idaho at 385, 957 P.2d at 1101 (ruling finding of guilt will not be overturned if there is substantial evidence upon which reasonable trier of fact could have found prosecution sustained burden of proving essential elements beyond reasonable doubt). In context, the testimony Victory identifies for his proposition that Mother and Daughter did not believe he intended to

4

hurt anyone relates to their *initial* belief and overlooks other testimony in which they explain they developed a fear during the confrontation. Moreover, we decline to reweigh the evidence to conclude otherwise. *See Knutson*, 121 Idaho at 104, 822 P.2d at 1001 (ruling appellate court will not substitute its view as to weight given to testimony).

Victory also argues insufficient evidence supports his conviction based upon what he characterizes as "an entire host of problems and inconsistencies" in the case. Victory identifies these "problems and inconsistencies" to include that Daughter's boyfriend described the confrontation differently than other witnesses; Mother had a medical issue which impaired her memory, could not accurately identify the knife, made no mention of the knife in her written statement, and did not call the police; Daughter "didn't see that much" of the incident and "provided a different description of the knife allegedly involved in the offense"; and the knife found in Victory's pocket was "not dispositive" of whether Victory threatened anyone with a knife during the confrontation.

That certain evidence may have been conflicting or circumstantial, however, is not a basis to conclude the evidence was insufficient to convict Victory. Substantial evidence may exist even when the evidence presented is solely circumstantial or when there is conflicting evidence. *State v. Severson*, 147 Idaho 694, 712, 215 P.3d 414, 432 (2009); *State v. Stevens*, 93 Idaho 48, 50-51, 454 P.2d 945, 947-48 (1969). In fact, even when circumstantial evidence could be interpreted consistently with a finding of innocence, it will be sufficient to uphold a guilty verdict when it also gives rise to reasonable inferences of guilt. *Severson*, 147 Idaho at 712, 215 P.3d at 432; *State v. Slawson*, 124 Idaho 753, 757, 864 P.2d 199, 203 (Ct. App. 1993). "Where there is competent evidence to sustain the verdict, we will not reweigh the evidence or disturb the verdict." *State v. Rogerson*, 132 Idaho 53, 58, 966 P.2d 53, 58 (Ct. App. 1998). Based on these principles, we decline to reweigh the evidence and hold that substantial evidence supports the jury's finding that Victory was guilty of both counts of aggravated assault.

**B.      Sentencing**

Victory argues the district court abused its discretion by imposing excessive sentences for aggravated assault. An appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court:   (1) correctly perceived the issue as one of

5

discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

Where a sentence is not illegal, the appellant has the burden to show it is unreasonable and thus a clear abuse of discretion. *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation, or retribution applicable to a given case. *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007).

Victory acknowledges his sentences are within the statutory limits but argues the district court abused its discretion by not considering mitigating factors. Victory identifies his past difficulties with mental health issues, his habitual homelessness, his dysfunctional childhood, and his drug abuse as mitigating factors. Victory also cites numerous cases for the proposition that a district court's insufficient consideration of mitigating factors is a basis for a more lenient sentence.

Each of the cases Victory cites, however, is distinguishable because each involves a defendant who had no prior criminal history or who expressed sincere remorse and a willingness to accept treatment. *See State v. Jackson*, 130 Idaho 293, 296, 939 P.2d 1372, 1375 (1997) ("Considering the four goals of sentencing . . . a fixed term of life in prison is not necessary to accomplish those goals. Further, Jackson has indicated that he wants to undergo treatment, has shown a desire to change his behavior and exhibits a possibility for rehabilitation."); *State v. Shideler*, 103 Idaho 593, 595, 651 P.2d 527, 529 (1982) ("This was the defendant's first felony with no prior history of any criminal activity and this court has recognized that the first offender should be accorded more lenient treatment than the habitual criminal.") (quotations omitted);

6

*Cook v. State*, 145 Idaho 482, 489-90, 180 P.3d 521, 528-29 (Ct. App. 2008) ("We find it notable that prior to his convictions in federal court for his involvement in the same scheme . . . at issue here, Cook had no prior criminal record."); *State v. Alberts*, 121 Idaho 204, 209, 824 P.2d 135, 140 (Ct. App. 1991) ("In light of Alberts' expression of remorse for his conduct, his recognition of his problem, his willingness to accept treatment and other positive attributes of his character, we conclude that some leniency in his sentences is justified."); *State v. Carrasco*, 114 Idaho 348, 354-55, 757 P.2d 211, 217-18 (Ct. App. 1988) (Burnett, J., concurring in part and dissenting in part) ("In our view, these sentences represent an unduly harsh sanction for an individual who--so far as the record shows--has no prior criminal record . . . . The sentences imposed here are longer than reasonably necessary to deter similar conduct in the future, to exact retribution, or to protect society."), *rev'd on other grounds*, 117 Idaho 295, 301, 787 P.2d 281, 287 (1990).

In contrast to these cases, Victory has a significant criminal history. This conviction is Victory's third felony conviction, and he committed this felony while on parole for his second robbery conviction. During his time on parole, Victory committed "a staggering amount of offenses" and "was a challenge to supervise." Based on this history, the district court concluded that Victory is "a dangerous person because of [his] attitude and [his] lifestyle" and that he "present[s] a danger to the community in [his] current state."

Likewise, Victory has failed to express any remorse and is unwilling to take responsibility for his conduct or to accept treatment. At sentencing the district court stated:

> Victory has mental health issues that contributed to the events in question compounded by the use of drugs and an adamant refusal to quit using drugs and a failure to follow mental health prescriptions in the past.
>     . . . .
>     [Y]ou also do not take responsibility for your conduct. [You] comment [that] you would do well and be okay if you could just be left alone to smoke your marijuana and have this one comfort in life. That is not a statement that gives [the court] confidence that you would comply with probation or that parole in the near future is appropriate.

The record supports the district court's comments and contradicts Victory's claims that the district court did not consider possible mitigating factors.

Finally, Victory's claim that his sentences constitute cruel and unusual punishment under the Eighth Amendment to the United States Constitution is without merit. When reviewing whether a sentence imposed under the Uniform Sentencing Act constitutes cruel and unusual punishment, this Court treats the minimum period of incarceration as the duration of

7

confinement. *State v. Matteson*, 123 Idaho 622, 626, 851 P.2d 336, 340 (1993); *State v. Daniel*, 127 Idaho 801, 804, 907 P.2d 119, 122 (Ct. App. 1995). Therefore, the Court will analyze only whether the fixed portion of the sentence violates the state and federal Constitutions.

To address Victory's constitutional challenge, we must first make a threshold comparison of the crime committed and the sentence imposed to determine whether the sentence leads to an inference of gross disproportionality. *Matteson*, 123 Idaho at 626, 851 P.2d at 340; *Brown*, 121 Idaho at 394, 825 P.2d at 491; *State v. Olivera*, 131 Idaho 628, 632, 962 P.2d 399, 403 (Ct. App. 1998). This gross disproportionality test is equivalent to the standard under the Idaho Constitution which focuses upon whether the punishment is out of proportion to the gravity of the offense committed and shocks the conscience of reasonable people. *Brown*, 121 Idaho at 394, 825 P.2d at 491. If an inference of such disproportionality is found, we must conduct a proportionality analysis comparing the sentence to those imposed on other defendants for similar offenses. *Matteson*, 123 Idaho at 626, 851 P.2d at 340; *Olivera*, 131 Idaho at 632, 962 P.2d at 403. The burden of demonstrating that a sentence is cruel and unusual is on the person asserting the constitutional violation. *State v. Clay*, 124 Idaho 329, 332, 859 P.2d 365, 368 (Ct. App. 1993). Applying these standards and having reviewed the record in this case, we cannot say that Victory's sentences constitute cruel and unusual punishment.

Based on an independent review of the record, Victory has failed to show the district court abused its discretion. We conclude that the district court properly considered the objectives of sentencing and the relevant mitigating factors and that the term of imprisonment ordered by the district court is not excessive.

### III.

### CONCLUSION

There is substantial evidence upon which the jury could have found that the prosecution sustained its burden of proving Victory committed aggravated assault of Mother and of Daughter. Further, the district court neither abused its discretion nor violated Victory's Eighth Amendment rights by imposing concurrent unified sentences of ten years with five years determinate for each count of aggravated assault. Accordingly, Victory's judgment of conviction and sentences are affirmed.

Chief Judge HUSKEY and Judge LORELLO **CONCUR**.

8