822 P.2d 998

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Robert KNUTSON, Defendant–Appellant.**

No. 18425.

Court of Appeals of Idaho.

Nov. 26, 1991.

Petition for Review Denied Jan. 31, 1992.

---

**103**

Michael J. Wood, Public Defender, Lisa A. Barini–Garcia, Deputy Public Defender, argued, Twin Falls, for defendant-appellant.

Larry J. EchoHawk, Atty. Gen., James E. Leuenberger, Deputy Atty. Gen., argued, for plaintiff-respondent.

## SUBSTITUTE OPINION ON DENIAL OF PETITION FOR REHEARING

The Court's prior opinion, dated September 6, 1991, is hereby withdrawn.

SWANSTROM, Judge.

Robert Knutson, a convicted felon, overpowered a security guard and escaped from the Magic Valley Regional Medical Center in Twin Falls, Idaho where he had been admitted for medical treatment. He was later apprehended by law enforcement authorities near Rock Creek Canyon in Twin Falls and charged with several new crimes. Knutson was found guilty by a jury of aggravated assault upon a law enforcement officer, I.C. §§ 18–905, –915; two counts of second degree kidnapping, I.C. §§ 18–4501, –4503; robbery, I.C.

§§ 18–6501, –6502; escape, I.C. § 18–2505; and second degree burglary, I.C. §§ 18–1401, –1402, –1404.

On one of the charges, the robbery, Knutson was sentenced to a maximum of thirty years in prison, with ten years required to be served before being eligible for parole. On appeal, Knutson contends that the robbery and the burglary convictions should be overturned because the evidence was insufficient for a conviction on either charge. Knutson also asserts that a mistrial should have been granted because the jury was prejudiced by the sight of his leg restraint. Finally, Knutson contends that his robbery sentence is excessive. For reasons explained below, we affirm the judgment of conviction as to each offense, and we uphold the sentence for robbery.

Knutson had been convicted in Twin Falls of delivering a controlled substance. I.C. § 37–2732. While still in the custody of the Twin Falls County Sheriff, Knutson complained of stomach pains and was taken to the Magic Valley Regional Medical Center for treatment. He was kept under guard during his hospital stay. In the early morning hours of November 8, 1990, Knutson slipped into the bathroom of the hospital room and dismantled his intravenous tube-stand to obtain a five-foot piece of metal pipe with hooks on one end. When he reappeared, Knutson brandished the pipe at the unarmed guard and ordered him to lie face down on the floor. The guard complied, but only after being threatened with his life. Knutson shackled the guard's hands behind his back and demanded his cowboy boots. Knutson attempted to remove the guard's boots with his hands, but when the guard began experiencing some discomfort, the guard told Knutson to back away so that he could kick the boots off his feet.

As Knutson began putting on the boots, a nurse's aide walked into the room. Knutson confronted the aide and told her to remain silent or he would hurt her. The aide and the guard were then ordered into the bathroom. Knutson told them to remain there and to count to two hundred before coming out, or else he would kill

them. Meanwhile, Knutson fled through a third-story window. After escaping from the hospital, Knutson broke into a house near the hospital and stole $104 from a wallet in a dresser drawer. Knutson was apprehended later that day. Following a jury trial, Knutson was found guilty of all six of the counts charged in the information. This appeal followed.

■ We turn first to the question of the sufficiency of the evidence in support of the robbery and burglary convictions. Our review is limited in scope. A judgment of conviction, entered upon a jury verdict, will not be overturned on appeal where there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Decker*, 108 Idaho 683, 701 P.2d 303 (Ct.App. 1985). We will not substitute our view for that of the jury as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Id.* Moreover, we will consider the evidence in the light most favorable to the prosecution. *Id.*

Knutson maintains that his robbery conviction is not supported by the evidence because no threatening statements were made to the guard at the time his boots were taken from him. Knutson argues that the initial threat to the guard was only designed to get the guard to lie on the floor so that he could place shackles on his hands. Once the guard complied with this request, Knutson contends, his demands were met, and the guard was no longer in fear of being injured.

■ We reject this contention. The guard's testimony indicates that Knutson approached him with the pipe and said, "You know my record. You know what I've done. I'll do it again. I'll kill you." The guard further testified that he only submitted to Knutson's demands because he was afraid that he might be seriously injured if he did not comply. When asked what would have happened if he had not kicked the boots off his feet, the guard

replied, "He would have kept pulling til (sic) they came off. As far as I can tell he wasn't worried if he was hurting me or not."

Robbery is defined as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." I.C. § 18–6501. If the guard was in fear of being injured when the boots were taken from him, then the essential elements of the crime of robbery have been established. *See* I.C. § 18–6502. The fact that no threatening statements were made to the guard by Knutson at the time he demanded the boots does not dissipate the fear that the guard experienced at the time his life was threatened with the metal pipe. "Fear and the force of fear may be created by threatening circumstances." *State v. Knee*, 101 Idaho 484, 487, 616 P.2d 263, 266 (1980). It was unnecessary for the guard to actively resist Knutson in order to provoke a more compelling show of force. *Id.* The record is replete with testimony showing that the boots were taken from the guard against his will by threat of force. Accordingly, we hold that there is sufficient evidence in the record to support the robbery conviction.

■ Knutson also contends that his burglary conviction is not supported by the evidence because there has been no showing that he had the requisite "intent to commit a theft" when he entered the home. "Burglary is a specific intent crime. It requires entry into a building with the intent, at that time, to commit theft or a felony." *State v. Matthews*, 108 Idaho 482, 484, 700 P.2d 104, 106 (Ct.App.1985). However, evidence of a forced entry will support a permissive inference of burglary with the requisite intent to commit a theft. *State v. Hoffman*, 109 Idaho 127, 705 P.2d 1082 (Ct.App.1985). Because the record shows that Knutson made a forced entry into the home, we hold that the required intent to commit a theft, at the time Knutson entered the home, has been established by the evidence.

Zina Tolman, the owner of the residence Knutson was alleged to have burglarized, testified that her house was located across the highway from the hospital on top of Rock Creek. Tolman testified that she left her house at about 9:00 a.m. on the morning of the incident and arrived home at approximately 3:00 p.m. that same day. When Tolman arrived home, she found a pair of cowboy boots outside the back door and the screen out of a window. The window was wide open and the curtain was blowing out the window. Tolman immediately called the police. Upon their arrival, Tolman inspected the home and found $104 missing from a wallet in her dresser drawer. Tolman told the police that the missing money consisted of four $20 bills, two $10 bills and two $2 bills.

The deputy sheriff who apprehended Knutson testified that Knutson was caught running without boots near Rock Creek Canyon about 4:30 p.m. on the day of the incident. The deputy also testified that $104 was found on Knutson when he was searched following the escape. The money recovered matched the amount and denominations reported stolen by Tolman earlier in the day. Based on this undisputed testimony, we hold that the burglary conviction is supported by substantial evidence.

We now consider whether a mistrial should have been granted when the defendant appeared in court with a partially visible leg restraint. Knutson argues that the jury's view of the leg restraint denied him the right to a fair trial and is inconsistent with the presumption that an accused is innocent until proven guilty.

Our standard for reviewing a denial of a motion for a mistrial is well-established. If the event producing the motion represents reversible error, a new trial will be granted unless the error is deemed harmless. *State v. Lute*, 108 Idaho 905, 702 P.2d 1365 (Ct.App.1985). The relevant inquiry is whether it appears from the record that the event triggering the mistrial motion contributed to the verdict. *Id.* When an appellate court is left with "reasonable doubt" that the same result would have been achieved by the jury had the event not

occurred, then the event will be deemed to have contributed to the verdict. *Id.* "Reasonable doubt would exist if the evidence of guilt were debatable." 108 Idaho at 908, 702 P.2d at 1368.

It is reversible error for a trial judge to require that an accused shall be shackled during trial, if shackles are not necessary for security, unless it is clear that the viewing of the leg restraint did not prejudice the jury. *State v. Crawford*, 99 Idaho 87, 577 P.2d 1135 (1978); *State v. Moen*, 94 Idaho 477, 491 P.2d 858 (1971). In other words, if the jury was prejudiced by observing the leg restraint, then the event should not be deemed harmless error.

The decision whether to grant or deny a request for a security device is left to the sound discretion of the trial judge. *State v. Moen, supra.* In exercising this discretion, the trial judge may rely upon evidence formally offered and admitted at trial, as well as knowledge gained from law enforcement officers and official records. *Id.* If counsel for the accused desires to object to the defendant being brought before the court in leg restraints, he or she should do so before the jurors arrive or after requesting a hearing outside the presence of the jury. *Id.* When such a hearing is held, the defendant and counsel should be provided the opportunity to oppose a demand by the prosecution that additional security precautions be taken at trial, including a request that the accused be required to wear a leg restraint. *State v. Crawford, supra.* In addition, the trial judge should state on the record the reasons for ordering such security devices, so that an appellate court can determine whether the trial court has properly exercised its discretion. *State v. Moen, supra.*

In the present case, the Twin Falls County Sheriff had requested, on the day before the jury was selected, that Knutson be shackled at trial because he posed a security risk. The prosecutor contended that Knutson was a security risk in view of the fact that he was charged with escape. The prosecutor also pointed out that Knutson had previously escaped from a jail in the State of California. This prior escape was

reflected in a presentence report dated October 5, 1988, which was prepared for a district judge in Twin Falls County in a prosecution for delivery of a controlled substance. Here, the prosecutor suggested that the potential for escape could be alleviated by having Knutson in leg irons with some sort of protective covering in front of both counsel tables, so that the jury would not be able to see the restraints. He further suggested that the jury could be excluded from the court when Knutson was brought into and out of the courtroom.

The court minutes reflect that Knutson was present at this hearing represented by Michael Wood, the Twin Falls Public Defender. His trial counsel, Deputy Public Defender Lisa Barini–Garcia was not present at this hearing. Wood objected to any restraining device because he claimed that it was impossible to hide such a fact from the jury. Wood further argued that shackling the defendant was a comment to the jury that the man is charged with escape and that he has to be held in shackles because of the validity of that charge. Knutson's counsel also asserted that a restraining device contradicts the presumption of innocence which an accused should enjoy during the course of a trial. Wood suggested that instead of using a restraining device, the court could limit Knutson's movement during the trial; Knutson could be restricted from moving about during recesses, unless accompanied by a security guard.

The trial judge ruled that he would allow the shackling if the state could find a security device that the jury would not be able to see at trial. The judge noted that, if the state could not assure that the security device would not be seen by the jury, the court would hear further argument outside the presence of the jury to determine whether or not the defendant should nevertheless be shackled. Although the judge did not specifically state the reasons for ordering the restraints, this failure does not entitle Knutson to a new trial. The record sufficiently justifies the order to restrain Knutson in a manner that would not be prejudicial. *Moen,* 94 Idaho at 480,

491 P.2d at 861 (citing *People v. Mendola,* 2 N.Y.2d 270, 140 N.E.2d 353, 159 N.Y.S.2d 473 (1957)).

The following morning, potential jurors were seated in the courtroom for the start of voir dire. The defendant was brought into the courtroom through the judge's chambers wearing a concealed knee brace on one leg and a locked weight on the other leg. The weight protruded about six inches below Knutson's pant leg. Knutson was then seated at defense counsel's table. Shortly after the proceedings began, the judge requested a recess and the jury was momentarily excused. It was at this time that defense counsel moved for a mistrial based on the prejudicial effect that the leg restraint (the weight) may have had on the prospective jurors. After a lengthy discussion between the parties and the judge outside the presence of the jury, the judge determined that, if the defendant had been sitting right next to defense counsel's table, it was possible that some jurors in the front row of the jury box could have seen the leg restraint. However, the jurors seated in the back row would not have been able to see the leg restraint because a bar obstructs the jurors' view of defense counsel's table. These findings were made after the judge had actually viewed the defendant's leg restraint from the jury box. In summary, the judge stated that he doubted the leg restraint was visible to many, if any, jurors, but he would concede that it was possible a few jurors might have seen the leg restraint. The judge further ruled that if any jurors saw the leg restraint, they would likely not know what it was and therefore would not be prejudiced by it.

Aside from the harmless failure to specify his reasons for ordering the leg restraint, the judge followed the hearing procedures set forth in *Moen.* When Knutson was brought into the courtroom, the prosecution and the defense were under the impression that the leg restraint would not be visible to the jury. However, at trial, it quickly became apparent to defense counsel that the leg restraint may not have been completely hidden from the jury.

This prompted the motion for a mistrial, which was denied.

In denying the defendant's motion for a mistrial, the judge concluded that the jury would not be prejudiced because, even if a few jurors had seen the leg restraint, the jury would have been told that the defendant was in custody prior to the start of this trial and that he was presently charged with escape. The judge reasoned that the jury would probably assume that if someone is charged with escape, more restraints would be put on the individual. The judge concluded that in this case even if a few jurors saw the leg restraint, no prejudice occurred.

From the record, we note that counsel for the defense rejected the trial court's offer to give a curative instruction to the jury regarding the defendant's appearance at trial in a leg restraint. Defense counsel also chose not to individually voir dire the jury on whether they had seen the leg restraint on the defendant and were prejudiced by it. Presumably, trial counsel did not want to draw the jurors' attention to this potentially prejudicial incident. At the request of defense counsel, and without objection from the prosecution, the judge ordered that the leg weight be left off during the remainder of the trial. From that point on, only the concealed knee brace was used.

On appeal, this Court has the task of determining whether the presence of the leg restraint was error, and if so, whether it caused the jury to be prejudiced against the defendant. On facts similar to these, our Supreme Court has held that it was not error for the trial court to refuse to remove the defendant's handcuffs during trial. *State v. Moen, supra.* In this case, the trial court was justified in believing that Knutson represented a significant security risk in the courtroom in light of his potential for violence and escape. Accordingly, we hold that it was not reversible error for the leg restraint to have been briefly left on the defendant at the start of jury selection. Finally, the evidence overwhelmingly supports the guilty verdict on each of the charges. Therefore, we hold that the temporary leg restraint did not prejudice the jury, even if it was seen by a few of the prospective jurors prior to jury selection.

We now turn to the last issue raised on appeal. Knutson contends that the judge abused his discretion by sentencing him to a lengthy period of incarceration on the robbery charge—thirty years with a minimum confinement term of ten years. Knutson previously had been given a five-year determinate sentence for delivering a controlled substance. Before Knutson began serving that sentence, he escaped from the hospital and committed these latest crimes. For the escape charge, Knutson was sentenced to five years, to be served consecutive to the sentence for delivery of a controlled substance, but concurrently with the sentences for the remaining charges.

Knutson received a ten-year sentence, with a minimum period of confinement of five years, for the charge of aggravated assault upon a law enforcement officer. Knutson also received a five-year sentence, with a minimum period of confinement of two years, on the second degree burglary charge. The robbery charge, which is the most serious of the crimes committed by Knutson, resulted in a thirty-year sentence, with a minimum period of confinement of ten years. No sentence was imposed for either of the kidnapping charges. The assault, burglary and robbery sentences are to run concurrently with each other and with the previous sentence for delivering a controlled substance. The cumulative effect of these sentences requires that Knutson serve anywhere from ten to thirty years in prison. Knutson will be a candidate for parole in ten years, after the minimum period of confinement has expired.

For purposes of appellate review, the probable measure of confinement is ten years, the time Knutson must serve in prison before being eligible for parole. *State v. Sanchez,* 115 Idaho 776, 769 P.2d 1148 (Ct.App.1989). To establish that his sentence is unreasonable, and therefore excessive, Knutson must show that, under any reasonable view of the facts, his sentence is excessive in light of the need to

protect society and to achieve any or all of the related goals of deterrence, rehabilitation or punishment. *State v. Toohill*, 103 Idaho 565, 650 P.2d 707 (Ct.App.1982).

Knutson contends that his robbery sentence is excessive in light of the fact that only a pair of boots was taken in the robbery, no one was injured during the ordeal, and nothing in his record suggests that he is an extremely dangerous person who needs to be incarcerated for up to thirty years. Knutson requests that we reduce his sentence in light of these reasons.

We reject Knutson's suggestion that we shorten his sentence. The judge was familiar with Knutson's criminal record. Knutson has been in and out of the prison system since he was a child, and all attempts at rehabilitation have been unsuccessful. The judge pointed out that, while it is true that no individuals were injured during the attempted escape, the potential for harm was significant. The judge noted that Knutson lacked maturity and that the length of the sentence assures that he will not "continue to act like an unguided missile." As the judge also noted, however, the sentence does provide him with "some light at the end of the tunnel." The judge stated that it was now up to Knutson to convince the authorities in the state penitentiary that he will be ready to be paroled in ten years. We note that the sentence also serves a deterrent purpose.

Accordingly, we hold that Knutson's robbery sentence was not excessive. The judgment of conviction, including the robbery sentence, is affirmed.

WALTERS, C.J., and SILAK, J., concur.