IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 47215

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: November 17, 2020 |
| Plaintiff-Respondent, | ) |
| | ) Melanie Gagnepain, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| EMILIE MARIE BARKER, | ) OPINION AND SHALL NOT |
| | ) BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. John T. Mitchell, District Judge.

Judgment of conviction for conspiracy to prepare false evidence and for conspiracy to intimidate a witness, affirmed.

Eric D. Fredericksen, State Appellate Public Defender; Jason C. Pintler, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent.

_____

BRAILSFORD, Judge

A jury convicted Emilie Marie Barker of destruction of evidence, Idaho Code § 18-2603; conspiracy to prepare false evidence, I.C. §§ 18-1701, 18-2602; and conspiracy to intimidate a witness, I.C. §§ 18-1701, 18-2604(3). On appeal, Barker challenges the convictions for conspiracy to intimidate a witness and conspiracy to prepare false evidence. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

The State presented evidence of the following facts at trial. In October 2018, Barker and her five-year-old daughter, B.B., lived with Barker's fiancé, Corey McGrath, and McGrath's mother, Sherri Wastweet, at Wastweet's residence in Coeur d'Alene. Meanwhile, Barker's

1

twelve-year-old daughter, L.N., lived with Barker's mother, Silvia, in Rathdrum. L.N., however, stayed with Barker at the Wastweet residence on weekends.

After B.B. tested positive for gonorrhea, law enforcement placed B.B. in shelter care with the Idaho Department of Health and Welfare (Department), and the Department informed Silvia that L.N. could not return to the Wastweet residence due to safety concerns. A forensic child examiner (examiner) interviewed B.B., and based on B.B.'s disclosures, McGrath was arrested and charged with lewd conduct with a minor under sixteen. After McGrath's arrest, law enforcement discovered numerous child pornography search results on his cellphone.

Also after McGrath's arrest, the examiner interviewed L.N. twice. Following L.N.'s second interview, McGrath was arrested again and charged with a second count of lewd conduct. Despite the pending charges against McGrath, Barker continued her relationship with McGrath and continued living with him at the Wastweet residence.[1] Based on the Department's concern that Barker was unable to protect the children, a no-contact order was issued in B.B.'s child protective case, precluding Barker from contacting the children without the Department's approval.

Thereafter, in late November, both children testified at McGrath's preliminary hearing.[2] L.N. testified that she met McGrath on Christmas 2014; the day after, he started touching her "private areas," which she identified as her breasts and vagina; and she could not "count how many times" he touched her but that "it happened normally every weekend." The magistrate court found sufficient evidence to believe McGrath was guilty of the charges and bound him over to the district court.

In December 2018, Barker contacted a Department social worker and admitted that she continued her relationship with McGrath and that she had recently been with L.N. at Silvia's residence despite the no-contact order. Further, Barker told the social worker L.N. wanted to "make a recanting statement." As a result of Barker's and Silvia's inability to comply with the no-contact order, L.N. was placed in shelter care.

---

[1]     McGrath bonded out of jail after both of his arrests and returned to live in the Wastweet residence.

[2]     L.N.'s preliminary hearing testimony in McGrath's case was also presented to the jury in this case.

Additionally, the examiner interviewed L.N. a third time after law enforcement was "advised [L.N.] was being told by [Barker] to recant her testimony." At trial, the social worker testified that, during L.N.'s third interview, L.N. disclosed that Barker came to Silvia's house, wrote a statement recanting L.N.'s testimony, and had her read the statement to Wastweet over the phone. Specifically, the social worker testified:

> So a conversation that had occurred with [L.N.] where she had indicated that [Barker] came to [Silvia's house] and had required--had written out a letter that she was to read to [Wastweet] over the phone stating that what she had made up was a lie. She had disclosed that [Barker]--that if she didn't do this, that [Barker] was going to kill herself, [McGrath] was going to go to prison, and that he would kill himself.
>
> She also reported that if she did this, that the department, specifically myself, would return [B.B.] to the home, and so she called [Wastweet] and read this written-out statement, and then indicated that after the phone call, [Barker] went out to the back porch and burned the note.

The State presented evidence that these events occurred on December 3. After the examiner interviewed L.N. about these events, Officer Sudol arrested both Barker and Wastweet at the Wastweet residence. The State charged Barker with destruction of evidence and conspiring with Wastweet to intimidate L.N. to recant her testimony and to record her false statement. Barker proceeded to trial.

At trial, Officer Sudol testified that while he was handcuffing Wastweet, she "went from kind of . . . confused to like an excited nervous," and that without prompting, she stated that "all I did was record a little girl." Further, Officer Sudol testified that when he interviewed Wastweet, she played for him "directly off her phone" the recording of L.N. reading the statement recanting her testimony.

Officer Sudol also testified at trial about his interview of Barker after her arrest. According to Officer Sudol, Barker admitted that she asked Wastweet to put a recording application on Wastweet's cellphone to record L.N. recanting her testimony; Barker had McGrath drive her to Silvia's residence where L.N. was alone while Silvia was at work; Barker wrote a statement recanting L.N.'s testimony and told her to call Wastweet and to read the statement to her; Barker told L.N. that she needed to say she lied if she did not want to be taken away from Barker and that if L.N. did not say she lied, McGrath would go to prison and kill himself; and then after L.N. read the statement to Wastweet, Barker burned it. In addition to Officer Sudol's testimony, the State also admitted a videotape of his interview of Barker.

3

Finally, Officer Sudol testified at trial about extracting data from the cellphones of McGrath, Wastweet, and L.N. During this testimony, the State admitted numerous exhibits showing communications on Wastweet's and L.N.'s cellphones, including communications on the date of the recording, December 3, and the following days leading up to Barker disclosing to the social worker that L.N. wanted to recant her testimony. Additionally, the State played the recording Wastweet made of L.N. reading the statement Barker wrote and admitted a transcript of the recording in evidence.

Wastweet did not testify at Barker's trial. Regardless, as stated above, the jury convicted Barker of destruction of evidence and of conspiring with Wastweet to prepare false evidence and to intimidate a witness. The district court sentenced Barker to five years with three years fixed for conspiracy to prepare false evidence and consecutive terms of five years indeterminate for conspiracy to intimidate a witness and for destruction of evidence. Barker filed a motion under Idaho Criminal Rule 35 for a reduction of her sentences, which the district court denied. Barker timely appeals only the convictions for conspiracy to prepare false evidence and to intimidate a witness.[3]

## II.

## ANALYSIS

Barker challenges the sufficiency of the evidence supporting her convictions for conspiracy to prepare false evidence and conspiracy to intimidate a witness. Appellate review of the sufficiency of the evidence is limited in scope. A finding of guilt will not be overturned on appeal where there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Herrera-Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct. App. 1998); *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct. App. 1991). We will not substitute our view for that of the trier of fact as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Knutson*, 121 Idaho at 104, 822 P.2d at 1001; *State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct. App. 1985). Moreover, we will consider the evidence in the light most favorable to the prosecution. *Herrera-Brito*, 131 Idaho at 385, 957 P.2d at 1101; *Knutson*, 121 Idaho at 104, 822 P.2d at 1001. "The relevant inquiry is not whether this Court would find the defendant to be

---

[3] Barker does not appeal her conviction for destruction of evidence, I.C. § 18-2603.

guilty beyond a reasonable doubt, but whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Adamcik*, 152 Idaho 445, 460, 272 P.3d 417, 432 (2012) (internal quotations and citation omitted).

Substantial evidence may exist even when the evidence presented is solely circumstantial or when there is conflicting evidence. *State v. Severson*, 147 Idaho 694, 712, 215 P.3d 414, 432 (2009); *State v. Stevens*, 93 Idaho 48, 50-51, 454 P.2d 945, 947-48 (1969). In fact, even when circumstantial evidence could be interpreted consistently with a finding of innocence, it will be sufficient to uphold a guilty verdict when it also gives rise to reasonable inferences of guilt. *Severson*, 147 Idaho at 712, 215 P.3d at 432; *State v. Slawson*, 124 Idaho 753, 757, 864 P.2d 199, 203 (Ct. App. 1993).

To prove a conspiracy, the State had to prove, beyond a reasonable doubt, an agreement between two or more individuals to accomplish an illegal objective, coupled with one or more overt acts in the furtherance of the illegal purpose accompanied by the requisite intent to commit the underlying substantive offense. *State v. Goggin*, 157 Idaho 1, 12-13, 333 P.3d 112, 123-24 (2014); *State v. Garcia*, 102 Idaho 378, 384, 630 P.2d 665, 671 (1981); *see also* I.C. § 18-1701 (defining criminal conspiracy). "An agreement that is the foundation of a conspiracy charge need not be formal or express, and the evidence of the agreement need not be direct." *State v. Tankovich*, 155 Idaho 221, 226, 307 P.3d 1247, 1252 (Ct. App. 2013). "Rather, the agreement may be inferred from the circumstances and proven by circumstantial evidence." *Id.* Also, "the motive of one co-conspirator is probative, though not necessarily conclusive, to prove the intent of another co-conspirator." *Id.*

The alleged conspiracy's illegal objectives at issue in this case are intimidating a witness, *see* I.C. § 18-2604(3) (setting forth elements of crime),[4] and preparing false evidence, *see*

---

[4]     Idaho Code § 18-2604(3) provides:

> Any person who, by direct or indirect force, or by any threats to person or property, or by any manner willfully intimidates, influences, impedes, deters, threatens, harasses, obstructs or prevents, a witness, including a child witness, or any person who may be called as a witness or any person he believes may be called as a witness in any criminal proceeding or juvenile evidentiary hearing from testifying freely, fully and truthfully in that criminal proceeding or juvenile evidentiary hearing is guilty of a felony.

I.C. § 18-2602 (setting forth elements of crime).[5]  Barker asserts a necessary element of both of these crimes is knowledge of falsity; i.e., the conspirators must have known the prepared evidence was false, and they must have intended to prevent the witness from testifying truthfully. Accordingly, Barker argues the State was required to prove that *both* Barker and Wastweet "knew [L.N.'s] recantation was false when they made the recording."  Barker concedes "the State presented sufficient . . . evidence [Barker] cajoled L.N. into recording a false statement," but she contends "the State failed to present any evidence [Wastweet] knew L.N.'s recantation was false."  As a result, Barker contends the State failed to prove a conspiracy between Wastweet and Barker occurred.

The State agrees that "if Wastweet did not know that L.N.'s recantation was false, she could not have been a co-conspirator because she would not be agreeing to commit either of the two underlying crimes, each of which requires . . . intent or knowledge."  The State argues, however, that it presented sufficient evidence that the jury could find beyond a reasonable doubt Wastweet knew that:  (1) "the recorded recantation by L.N. was false," and (2) "L.N. was intimidated, influenced, threatened or harassed to prevent her from testifying truthfully against McGrath."

We agree with the State.  A reasonable trier of fact could have found from the evidence and inferences that Wastweet knew that L.N.'s recanting statement was false and that she was being intimidated to testify falsely.  A review of that evidence shows that Barker instructed Wastweet to install a recording application on her cellphone to record L.N. recanting her testimony.  On the evening of the recording, December 3, Wastweet's personal contact information was added to L.N.'s cellphone for the first time about twenty minutes before L.N. called Wastweet and read the statement Barker wrote.  Wastweet recorded L.N.'s statement on Wastweet's cellphone, indicating she agreed to install a recording application on her phone per Barker's earlier instruction.  In the recording, Wastweet repeatedly instructed L.N. not to talk to the social worker assigned to protect L.N.; to contact McGrath's attorney; and to write down

---

[5]  Idaho Code § 18-2602 provides:

> Every person guilty of preparing any false or antedated book, paper, record, instrument in writing, or other matter or thing, with intent to produce it, or allow it to be produced, for any fraudulent or deceitful purpose, as genuine or true, upon any trial, proceeding or inquiry whatever, authorized by law, is guilty of felony.

L.N.'s recanted statement. Then, the next morning, Barker texted Wastweet and asked, "Please send the phone call to me either through txt [sic] or email."

A few days later on December 6, Wastweet exchanged numerous text messages with L.N. late in the evening beginning about 10 p.m. In those texts, Wastweet asked L.N. to call McGrath's attorney and to tell the attorney "what you told me"; provided L.N. the telephone number of "the investigator trying to help" McGrath; and instructed L.N. to call him "[t]omorrow." Additionally, on the following morning at about 7:30 a.m., L.N. created a "note" on her cellphone of a text message which stated, "Make sure you get ahold of [the investigator] and make your statement and delete all of our phone calls and messages." Although Officer Sudol was unable to determine who sent this message to L.N., the jury could have reasonably inferred that Wastweet sent the message based on its timing and content. Then, upon Wastweet's arrest, she exclaimed that "all I did was record a little girl," suggesting she understood the nature of her crime before being advised of the reason for her arrest.

Viewing all of this evidence in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that Wastweet agreed to conspire with Barker to intimidate L.N. into making a false statement for purposes of recanting her prior testimony. The cumulative effect of the State's evidence was more than adequate to establish a conspiracy between Wastweet and Barker. This evidence included Barker and Wastweet's joint preparation to record L.N. recanting her testimony; Wastweet's statements to L.N. on the recording; her subsequent text messages; her possession of the recording on her cellphone; the continued close association between Wastweet and Barker, including that Barker remained living at the Wastweet residence after McGrath's charges; and Wastweet and Barker's shared motive of protecting McGrath.

We disagree with Barker's assertion that "there was simply no evidence presented to the jury that [Wastweet] knew that L.N.'s recantation was false." Although the State's evidence was not direct, the State presented ample circumstantial evidence giving rise to a reasonable inference Wastweet knew that L.N.'s recanting statement was false and that she and Barker were intimidating L.N. into making the false statement. Circumstantial evidence is sufficient to uphold a guilty verdict if it gives rise to a reasonable inference of guilt, even if that evidence could also give rise to a finding of innocence. *State v. Adbullah*, 158 Idaho 386, 430, 348 P.3d 1,

45 (2015). Accordingly, we hold that substantial, competent evidence supports Barker's convictions for conspiracy to prepare false evidence and conspiracy to intimidate a witness.

## III.

## CONCLUSION

Substantial and competent evidence supports the jury's verdict finding Barker guilty of conspiring with Wastweet to prepare false evidence and to intimidate a witness. Accordingly, the judgment of conviction for conspiracy to prepare false evidence and for conspiracy to intimate a witness is affirmed.

Chief Judge HUSKEY and Judge GRATTON **CONCUR**.