**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 49966**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: June 6, 2024** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| WALTER H. SPENCER, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Elmore County. Hon. Theodore Fleming, District Judge.

Judgment of conviction, <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender; Sally J. Cooley, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Judge

Walter H. Spencer appeals from his judgment of conviction by a jury of one count of sexual abuse of a vulnerable adult and one count of possession of a firearm by a felon. Spencer contends there is insufficient evidence to support the guilty verdict on the sexual abuse charge. Spencer also argues the district court abused its discretion by imposing an excessive sentence. For the following reasons, we affirm the judgment of conviction and sentence.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Police executed a search warrant on Spencer's motor home. Spencer, a sixty-year-old man, resided in the motor home with L.R., an autistic and intellectually disabled twenty-five-year-old woman whom Spencer referred to as his stepdaughter. Spencer answered the door and was led to a nearby patrol car by Deputy Griffin. As Deputy Griffin was doing that, two other officers, a

1

male and a female, entered the home and found L.R. sleeping naked in the only bed in the trailer. L.R. panicked at the sight of the officers, began screaming, and attempted to tase one of the officers. L.R. was subdued, placed in flex cuffs, and placed in the passenger seat of the motor home. While the female officer spoke with L.R., the other officers looked around the motor home.

Officers observed that the bedroom where L.R. was found was covered in balloon-themed wall covering with posters of cartoon characters such as Minnie Mouse, Daisy Duck, and Strawberry Shortcake hanging on the wall. The trailer also contained a variety of toys and activities designed for young children including plastic tea sets, baby dolls, mega blocks, coloring books, and sippy cups. Officers found a large rifle pellet gun and a small caliber pistol near the driver's seat. During the search of the motor home, officers also found a tablet that contained videos of L.R. dancing naked. Spencer confirmed the tablet was his.

Thereafter, Spencer was interviewed by officers. During that interview, Spencer explained he dated L.R.'s mother for approximately six years, beginning when L.R. was approximately eight years old. After the relationship ended, he became the primary caretaker of L.R. Spencer was acting as L.R.'s guardian and takes care of L.R. by providing shelter, doing the shopping, cleaning, taking out the trash, and other chores that L.R. doesn't like to do or is unable to do. L.R.'s biological mother granted temporary custody to Spencer when they separated, and Spencer is the legal payee for the social security income L.R. receives due to her disabilities. Spencer began a sexual relationship with L.R. when she was nineteen years old. Spencer admitted they had plans to marry and had been trying to conceive a child. Spencer stated he had sexual intercourse with L.R. two days prior. Spencer admitted he owned the firearms that were found and indicated they were passed down through the family. The officers arrested Spencer.

After Spencer was arrested, L.R. was evaluated by the Idaho Department of Health and Welfare (Department) to determine the possible need for commitment to the State of Idaho under the Developmental Disabilities Act § 66-406. The report indicated L.R. had been diagnosed with autism at a young age. The evaluation committee observed that L.R.'s "demeanor and mental capacity was conducive to a seven- or eight-year-old child." For example, L.R. indicated one of her favorite activities is to watch Strawberry Shortcake movies and reads books intended for young children. L.R. also stated Spencer cooks, cleans, and does laundry for her. The evaluation committee found that L.R. is "extremely gullible/vulnerable and easily taken advantage of, she is unable to manage her own financial resources, consent for medical care, and cannot independently

2

meet essential requirements for her health and safety." L.R. was civilly committed to the Department.

The State charged Spencer with felony sexual abuse of a vulnerable adult, Idaho Code § 18-1505B(a), and felony unlawful possession of a firearm, I.C. § 18-3316. A jury trial was held, and Spencer was convicted of sexual abuse of a vulnerable adult and unlawful possession of a firearm. Spencer was sentenced to a unified term of twenty years, with a minimum period of incarceration of ten years, for the crime of sex abuse of a vulnerable adult, and a determinate sentence of one year for the crime of unlawful possession of a firearm to be served consecutively. Spencer timely appeals.

## II.

## STANDARD OF REVIEW

Appellate review of the sufficiency of the evidence is limited in scope. A finding of guilt will not be overturned on appeal where there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Herrera-Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct. App. 1998); *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct. App. 1991). We will not substitute our view for that of the trier of fact as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Knutson*, 121 Idaho at 104, 822 P.2d at 1001; *State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct. App. 1985). Moreover, we will consider the evidence in the light most favorable to the prosecution. *Herrera-Brito*, 131 Idaho at 385, 957 P.2d at 1101; *Knutson*, 121 Idaho at 104, 822 P.2d at 1001.

When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

## III.

## ANALYSIS

On appeal, Spencer contends the State failed to present sufficient evidence to support a guilty verdict because the State failed to prove L.R. was a vulnerable adult under I.C. § 18-1505.

3

Spencer argues this is because the State did not prove that L.R.'s mental deficits rendered her incapable of consenting to sexual contact and an individual's developmental disability does not directly correlate to an inability to understand or consent to sexual contact. Spencer further argues L.R. understood and enjoyed sex and consented to, and initiated, sexual relations with Spencer. The State contends the definitions under I.C. § 18-1505 describe individuals who cannot protect themselves from exploitation due to mental impairment and are therefore legally incapable of giving valid consent. The State argues that because L.R. is legally incapable of giving consent and because consent is not an element of the offense, it was not required to prove L.R. was not able to consent to sexual activity.

Spencer also contends the district court abused its discretion in imposing an excessive sentence because it did not exercise reason in reaching its conclusion. The State submits that the district court properly considered the sentencing factors, and Spencer failed to demonstrate that reasonable minds could not conclude the sentence was appropriate.

## A. L.R. Is a Vulnerable Adult Under I.C. § 18-1505B

Spencer argues L.R. is not a vulnerable adult because L.R. was capable of communicating and implementing decisions regarding her person. According to Spencer, because L.R. was not a vulnerable adult pursuant to I.C. § 18-1505B, she could legally consent to engage in consensual sex. The State maintains L.R. is a vulnerable adult due to her intellectual deficits and autism and, as a result, is legally incapable of giving consent. The State argues sufficient evidence was presented to support the conclusion that L.R. is a vulnerable adult, and a rational juror could reach the same conclusion based on their own observation of L.R. during the trial and their own assessment of the testimony given by L.R. and the other witnesses.

Idaho Code § 18-1505B makes it "a felony for any person, with the intent of arousing, appealing to or gratifying the lust, passion or sexual desires" of themselves, the victim, or a third party, to "[c]ommit any lewd or lascivious act or acts" upon a vulnerable adult. A vulnerable adult is defined as:

> a person eighteen (18) years of age or older who is unable to protect himself from abuse, neglect or exploitation due to physical or mental impairment which affects the person's judgment or behavior to the extent that he lacks sufficient understanding or capacity to make or communicate or implement decisions regarding his person, funds, property or resources.

I.C. § 18-1505(4)(e).

4

It is undisputed that L.R. is developmentally disabled with a measured IQ of fifty-five and was diagnosed with autism when she was a child. Based on Spencer's arrest and L.R.'s apparent inability to care for herself, the Department evaluation committee was asked to perform an emergency evaluation of L.R. to determine if she should be civilly committed, as she lacked other viable care alternatives following the arrest of Spencer. The report created by the Department committee during the emergency evaluation indicates L.R. was incapable of taking care of herself and adequately providing for her own health and safety. Specifically, the committee found L.R. to be "extremely gullible/vulnerable and easily taken advantage of" and demonstrated the demeanor and mental capacity consistent with a seven- or eight-year-old child. The committee was in the best position to evaluate L.R. because of their professional credentials and the temporal proximity to the events. The report was admitted as an exhibit for jury consideration.

L.R.'s testimony was consistent with the conclusion reached in the evaluation. During her testimony, L.R. testified she likes to "watch Strawberry Shortcake and Care Bears and My Little Pony and Trolls, and [she] like[s] Peppa Pig too and Dora the Explorer and Tinker Bell." L.R. testified that she does not know how to handle money, she does not know how her rent is paid, she struggles to use a debit card, and she did not understand why she was in court or what the jury was. The State asked L.R., "Do you know what sex is?" and she answered, "No." Later in her testimony, she described the question as "confusing" and was concerned she would be arrested or sued by the court for answering the question. L.R. then stated it embarrassed her to talk about sex. L.R. also stated she knows how to cook orange chicken and vegetables, brushes her own hair, and does laundry, although sometimes she needs help.

Spencer argues L.R.'s testimony showed that she was able to take care of herself because she testified that she cooks, does laundry, and takes care of her hygiene. Spencer contends he was not exploiting L.R. because they had plans to marry and have a child together. Spencer further points to L.R.'s reaction when officers arrived at the motor home as indicative of her ability to speak for herself and her capacity to protect her person against unwanted intrusions as she repeatedly told the officers not to touch her and grabbed a stun gun.

Even if we considered the testimony to be conflicting, "It is the jury's function to assess the demeanor of the witnesses and make a determination of credibility. . . . This Court will not second-guess the jury's determination on credibility or the weight to be given to witnesses' testimony." *State v. Allen*, 129 Idaho 556, 558, 929 P.2d 118, 120 (1996). Based on the testimony

5

presented and the evidence admitted, there was substantial evidence upon which a reasonable trier of fact could find that L.R. met the definition of a vulnerable adult.

On appeal, Spencer argues the State did not present any evidence that L.R. lacked sufficient understanding or capacity to make or communicate or implement decisions regarding sexual contact with her person. We disagree, as L.R. testified she did not know what sex was or how babies are conceived. Regardless, I.C. §§ 18-1505B and 18-1505(4)(e) did not require the State to prove that L.R. lacked sufficient understanding regarding sexual contact. The statutory definition of a vulnerable adult is one who is unable to protect herself from abuse or exploitation due to impairment affecting her judgment or behavior to the extent she lacks sufficient understand or capacity regarding decisions involving her "person, funds, property or resources." I.C. § 18-1505(4)(e).

The issue of consent was addressed in *State v. Knutsen*, 158 Idaho 199, 345 P.3d 989 (2015). There, Knutsen and the victim were patients at a psychiatric hospital. *Id*. at 200, 345 P.3d at 990. Knutsen sexually assaulted the victim and was charged with, and found guilty by a jury, of four counts of sexual abuse of a vulnerable adult pursuant to I.C. § 18-1505B. *Id*. at 201, 203-04, 345 P.3d at 990, 993-94. Knutsen appealed, arguing, among other claims, that the statute was unconstitutionally overbroad because it restricted adults "from carrying out their constitutionally guaranteed right to engage in sexual activity." *Id*. at 203, 345 P.3d at 993. The district court rejected that argument on several grounds. Relevant here, the Supreme Court reasoned that the sexual conduct in Knutsen's case was not:

> between two adults with full and mutual consent from each other. Although the victim was an adult, as a matter of law she was unable to consent to the sexual conduct. Even though the word "consent" is not in the statute, it is a legislative determination that vulnerable adults as defined in the statute are unable to consent to the sexual conduct described in the statute.

*Id*. at 204, 345 P.3d at 994. The Court further held that, "In enacting Idaho Code section 18-1505B, the legislature defined a specific group of adults who, as a matter of law, are unable to consent to the proscribed sexual conduct." *Id*. at 205, 345 P.3d 995.

In this case, the State presented ample evidence that L.R. was a vulnerable adult. Once that was established, the State was not required to prove consent because as a matter of law, L.R. could not consent to sexual conduct with Spencer.

6

**B.      Spencer's Sentence Was Within Appropriate Guidelines**

Spencer contends the district court abused its discretion by failing to exercise reason when it sentenced him to a unified term of incarceration of twenty years, with ten years determinate, for the abuse of a vulnerable adult conviction and one year determinate for unlawful possession of a firearm conviction, to run consecutively.  Spencer contends the sentence was unduly harsh because it was his first arrest in thirty years, he is not a threat to society, L.R. stated she did not feel like a victim, and he loved her and wanted to marry her.  Spencer suggests that in light of these factors, he should only have received probation.  The State argues the district court explained its reasoning and considered I.C. § 19-2521, which requires a sentencing court to consider probation prior to imposing a prison sentence.  The State contends the district court appropriately determined that Spencer was a risk to the community based on the details in the presentence investigation report (PSI).  The State argues the district court acted within its discretion and applied reason in imposing the sentence.

Sentencing is a matter for the trial court's discretion.  Both our standard of review and the factors to be considered in evaluating the reasonableness of the sentence are well established and need not be repeated here.  *See State v. Hernandez*, 121 Idaho 114, 117-18, 822 P.2d 1011, 1014-15 (Ct. App. 1991); *State v. Lopez*, 106 Idaho 447, 449-51, 680 P.2d 869, 871-73 (Ct. App. 1984); *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982).  That discretion includes the trial court's decision regarding whether a defendant should be placed on probation.  I.C. § 19-2601(3), (4); *State v. Reber*, 138 Idaho 275, 278, 61 P.3d 632, 635 (Ct. App. 2002); *State v. Lee*, 117 Idaho 203, 205-06, 786 P.2d 594, 596-97 (Ct. App. 1990).  Of the four prongs of the abuse of discretion standard, only the exercise of reason is challenged on appeal.  "The role of this Court, in determining if the district court reached its decision by an exercise of reason, is to review the process the district court engaged in to make its decision."  *Palmer v. Spain*, 138 Idaho 798, 801, 69 P.3d 1059, 1062 (2003).  The hallmark of a discretionary decision that is not reached by an exercise of reason is arbitrariness.  *See State v. Dopp*, 124 Idaho 481, 483, 861 P.2d 51, 53 (1993).  Here, the district court explained its reasons for imposing the above sentence.

First, the district court acknowledged that its decision is guided by the factors in I.C. § 19-2521 which encourages probation unless it would not be appropriate.  The district court determined probation would not be appropriate for several reasons:  (1) probation would depreciate the seriousness of the offense; (2) it seemed likely Spencer would continue to be in a relationship with

7

L.R.; and (3) it would fail to send an appropriate deterrent message to Spencer and others. The district court then articulated the four goals of sentencing: punishment; deterrence of Spencer and others; rehabilitation; and protection of society, generally, and L.R., specifically.

In determining the length of the sentence, the district court explained that while it considered the hearsay in the PSI to be reliable, the court gave unsworn statements lesser weight. The district court did not draw any inferences from Spencer's refusal to participate in the PSI. More concerning to the district court was preventing Spencer from "taking advantage of [L.R.] in the future because it's clear to [the court] that she'll let you," and "it's clear to [the court] that you're likely to go right back into that relationship when you're released. You don't feel it's inappropriate. You don't express any desire to change." The district court pointed to L.R.'s inability to protect herself from future abuse, the jury's finding that L.R. is a vulnerable adult, and legislative intent that vulnerable citizens who are unable to make decisions about themselves be legally incapable of consenting to certain activities. The district court noted this type of crime goes "unreported for long periods of time because the vulnerable person doesn't realize that they are being exploited or abused because they're vulnerable" and the sentence needed to serve as a deterrent. The district court also discussed that some of Spencer's comments "indicate to [the court] that you are one of those people who puts lesser weight on following society's rules than perhaps the norm." The district court considered the statements of Spencer's son, his ex-wife, and the letter of support. In announcing the sentence the district court stated,

> Weighing all those things, I'm left with an abiding belief that you're likely to go back into this relationship as soon as you can if you think you're not going to get caught, and I need to change that attitude, and I need to dissuade you from making that decision when you get the opportunity to [in] the future.

In regard to the unlawful possession of a firearm, Spencer's prior felony conviction resulted in his prohibition from possessing a firearm. The district court acknowledged it was a per se violation, and the manner (or lack thereof) of securing the firearms would not be considered. The district court reminded Spencer that he was aware he was not supposed to possess a firearm and imposed a one-year determinate sentence in order to deter future behavior.

The district court explicitly laid out the reasons for the length of the sentence imposed and why probation would be inappropriate. The record in this case shows that the district court properly considered the information before it and determined that probation was not appropriate.

8

Spencer has not shown that the district court failed to exercise reason or consider Spencer's situation.

## IV.

## CONCLUSION

Sufficient evidence was presented to support the guilty verdict by the jury. The district court exercised reason in imposing sentence. We affirm the judgment of conviction and sentences.

Chief Judge GRATTON and Judge Pro Tem MELANSON, **CONCUR**.