**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 51808**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: October 31, 2025** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| JASON RAY STUDER, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Cheri C. Copsey, District Judge.

Judgment of conviction for felony possession of a controlled substance and misdemeanor possession of drug paraphernalia, <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender; Jenny C. Swinford, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

_____

MELANSON, Judge Pro Tem

Jason Ray Studer appeals from his judgment of conviction for felony possession of a controlled substance and misdemeanor possession of drug paraphernalia. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Studer was shot by his girlfriend. Despite being wounded he drove to a gas station where police were dispatched. While officers were rendering aid to Studer, they took off his hoodie and placed it on the ground. After Studer was transported to the hospital police picked up the hoodie and a baggie containing a crystal-like substance fell out. The substance tested positive for methamphetamine. When Studer was released from the hospital he was charged with possession of methamphetamine and possession of drug paraphernalia (the baggie). At trial, a forensics

1

expert testified that the crystal-like substance in the baggie contained methamphetamine. Studer was found guilty by a jury of possession of a controlled substance, I.C. § 37-2732(c), and possession of drug paraphernalia, I.C. § 37-2734A. Studer appeals, contending that the State did not present sufficient evidence to prove that the crystal-like substance in the baggie referred to at trial was the same substance recovered at the scene after it fell from Studer's hoodie.[1]

## II.

## STANDARD OF REVIEW

Appellate review of the sufficiency of the evidence is limited in scope. A finding of guilt will not be overturned on appeal where there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Herrera-Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct. App. 1998); *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct. App. 1991). We will not substitute our view for that of the trier of fact as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Knutson*, 121 Idaho at 104, 822 P.2d at 1001; *State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct. App. 1985). Moreover, we will consider the evidence in the light most favorable to the prosecution. *Herrera-Brito*, 131 Idaho at 385, 957 P.2d at 1101; *Knutson*, 121 Idaho at 104, 822 P.2d at 1001.

## III.

## ANALYSIS

The evidence presented at trial consisted of the testimony of four police officers and a forensic scientist. The first officer testified that he was dispatched to the gas station for a medical emergency and that, upon arrival, he found Studer, who was wearing a black hoodie. The officer testified that he removed the hoodie and placed it on the ground without searching it and that Studer was transported to the hospital without the hoodie. A still photograph from the officer's body camera was admitted showing Studer wearing the black hoodie. A second officer testified that he arrived with the first officer. The second officer confirmed that Studer was wearing a black hoodie and that he observed the first officer remove the hoodie and place it on the ground. The

---

[1] Neither the baggie nor its contents were admitted at trial.

second officer's bodycam video was admitted showing the hoodie on the ground. The second officer also testified that he did not search the hoodie. A third officer testified that he arrived after the first two officers and that he saw the black hoodie on the ground and picked it up. When the third officer picked it up, a black phone cord or charger and a baggie with a crystal-like substance fell out of the hoodie. The third officer testified that the baggie had a "very distinctive kind of Pac-Man logo and print on one side." A photograph of the baggie showing the Pac-Man logo and the crystal-like substance inside was admitted at trial as State's Exhibit 7. The third officer testified that he showed the baggie to a fourth officer who then picked it up. As to the baggie and its contents the fourth officer testified as follows:

> Q.     [O]nce you got that powdery substance and that--the baggie, what did you do with it? Did you eventually ship it off somewhere or--
> A.     We did. We sent it to the Idaho testing laboratory.
> Q.     And how was it packaged up? Can you explain to the jury kind of how it gets from your hands over to a laboratory?
> A.     Yeah. So, there is specific procedures and policies in place as far as how they want us to impound property or book property. There is [sic] specific procedures as far as the packaging when you put an evidence seal on that and we initial it to make sure that it can't be tampered with.
> Q.     Was the chain of custody clean on--on this baggie, the powder?
> A.     Yes, it was.
> Q.     Did you follow procedure?
> A.     Yes.

The State did not have the fourth officer describe the baggie or its contents, show him State's Exhibit 7, or ask him about any identification number associated with the baggie. However, on cross-examination the fourth officer was shown State's Exhibit 7 and confirmed that he took the photograph and collected the baggie found on the ground.

After testifying regarding her qualifications and experience, as well as the usual procedures followed in testing suspected methamphetamine, an Idaho State Police forensic scientist testified as follows:

> Q.     In this case did you conduct the previously described scientific examination upon the suspected controlled substance?
> A.     Yes, I did.
> Q.     And is that--is there a control number or some kind of number that's attached to it?
> A.     It was laboratory case number 20232192 and the agency case number was 2023 DR307891.

3

Q.      Thank you.  How did you obtain this evidence?
A.      I have requested forensic evidence specialist to transfer the item into my possession and, then, I take it into the lab where I have my own personal locker that only I have access to where it remains for the duration of the analysis.
Q.      How was it packaged?
A.      The evidence arrived inside the evidence envelope.
Q.      Did that evidence envelope--did it appear to be tampered with in any way?
A.      It did not.
Q.      Was there a baggie inside of that envelope?
A.      Yes.  Inside the envelope there was a heat sealed plastic bag containing a Ziploc bag with a blue Pac-Man design on it, that inside of that was the evidence that I analyzed.
Q.      Thank you.  Were you able to obtain a weight of the item?
A.      Yes, I was.
Q.      What was the weight?
A.      It was 1.94 grams of crystalline material.
Q.      What type of--type of balance do you use?
A.      I use electronic top loading balance.
Q.      Is your balance checked for accuracy?
A.      Yes.  It's checked monthly by chemists such as myself with the certified weights and it has annual performance verification by an outside vendor.
Q.      Were you able to perform an analysis on the item in this case to determine what it was?
A.      Yes, I was.
Q.      Please describe the testing you performed.

Studer then objected, arguing that the State had not provided an adequate chain of custody. The objection was overruled by the district court, after which the witness testified further regarding the tests she performed concluding that the substance in the baggie contained methamphetamine and that the weight of the substance was 1.94 grams.  Later in the trial, the district court revisited its ruling on Studer's objection to the forensic scientist's testimony.  The district court correctly noted that the drugs were not admitted, so Studer's objection was directed to the witnesses' testimony, not an item of physical evidence.  The district court ruled:

So, it's really not an admissibility issue, it really goes to the weight of the evidence and the case law is pretty clear on that.
So, that's--I just want to make the evidence--the record very clear as to what I considered in the chain of custody.  It is also a matter of discretion for The Court. But, again, it goes to weight, even if we were talking about the admissibility of a specific piece of evidence, which we are not.  We are talking about her reliance on that.

4

On appeal, Studer argues that there was insufficient evidence to establish the item tested by the forensic scientist was the same item seized by the fourth officer and that, therefore, the State did not present sufficient evidence to prove that Studer possessed methamphetamine or paraphernalia.

Our standard of review requires that we not substitute our view for that of the trier of fact as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. Furthermore, we consider the evidence in the light most favorable to the prosecution. Here, the evidence presented to the jury was that a "very distinctive" baggie with a "Pac-Man logo and print on one side" containing a "crystal-like substance" fell from Studer's hoodie. Police sent the baggie and its contents to the lab in packaging closed by an "evidence seal" and in accordance with protocol for handling evidence. The lab received an official evidence envelope with a sealed plastic bag inside. Inside the sealed bag and evidence envelope was a "Ziploc bag with a blue Pac-Man design on it" containing a crystal-like substance. No evidence suggested that the crystal-like substance in the Pac-Man baggie tested by the lab was not the crystal-like substance in a Pac-Man baggie that fell from Studer's hoodie. The evidence admitted is sufficient to support the jury's verdict when viewed in the light most favorable to the State.

## IV.

## CONCLUSION

The evidence admitted at trial was sufficient to support the jury's verdict. Therefore, Studer's judgment of conviction for felony possession of a controlled substance and misdemeanor possession of drug paraphernalia is affirmed.

Chief Judge GRATTON and Judge TRIBE, **CONCUR**.