# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 50537

STATE OF IDAHO, )
                        )
                        ) **Filed: January 31, 2025**
       **Plaintiff-Respondent,** )
                        ) **Melanie Gagnepain, Clerk**
v. )
                        )
KIRK A. ERICSON, )
                        )
       **Defendant-Appellant.** )
                        )

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Derrick O'Neill, Hon. Cheri C. Copsey, District Judges.

Judgment of conviction for forcible penetration by use of a foreign object, <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender; Ben P. McGreevy, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent.

_____

TRIBE, Judge

Kirk A. Ericson appeals from his judgment of conviction for forcible penetration by use of a foreign object. Ericson argues that the State failed to present sufficient evidence to support his conviction for forcible penetration. Ericson also argues that the district court abused its discretion in excluding certain testimony. For the reasons set forth below, we affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

The victim in this case, J.D., was in a car accident from which she received back, neck, and head injuries. The head injury included a traumatic brain injury. To help manage the pain from the accident, J.D. participated in physical and massage therapy. While giving a massage to J.D. in

his role as a massage therapist,[1] Ericson penetrated her vagina with his finger and put his hand on her breast. Ericson claimed J.D. consented to the sexual contact. J.D. denied the sexual contact was consensual. During the jury trial, testimony included that JD was unable to give consent at the time of the incident. At the conclusion of the trial, Ericson was convicted of forcible penetration by use of a foreign object (Idaho Code § 18-6608). Ericson appeals.[2]

## II.

## STANDARD OF REVIEW

Appellate review of the sufficiency of the evidence is limited in scope. A finding of guilt will not be overturned on appeal where there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Herrera-Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct. App. 1998); *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct. App. 1991). We will not substitute our view for that of the trier of fact as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Knutson*, 121 Idaho at 104, 822 P.2d at 1001; *State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct. App. 1985). Moreover, we will consider the evidence in the light most favorable to the prosecution. *Herrera-Brito*, 131 Idaho at 385, 957 P.2d at 1101; *Knutson*, 121 Idaho at 104, 822 P.2d at 1001.

The trial court has broad discretion in determining the admissibility of testimonial evidence. *State v. Smith*, 117 Idaho 225, 232, 786 P.2d 1127, 1134 (1990). A decision to admit or deny such evidence will not be disturbed on appeal absent a clear showing of abuse of that discretion. *Id.* When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached

---

[1]     Ericson did not have an Idaho massage license at the time of the incident.

[2]     Ericson was found guilty of two additional misdemeanor charges (sexual battery and practicing massage therapy without a license). Ericson does not challenge these convictions on appeal.

its decision by an exercise of reason.  *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

**III.**

**ANALYSIS**

Ericson argues that the State failed to present sufficient evidence to support his conviction for forcible penetration by use of a foreign object.  Ericson also argues that the district court erred when it excluded proposed testimony regarding the victim's memory issues as not relevant, unduly confusing, and cumulative.  The State argues that Ericson has failed to show it presented insufficient evidence to support his conviction for forcible penetration by use of a foreign object. The State also argues that Ericson has failed to show that the district court abused its discretion by excluding the proposed testimony regarding the victim's memory issues.

**A.      Sufficiency of the Evidence**

Ericson makes two arguments regarding the sufficiency of the evidence:  First, the jury could not properly have found that J.D. was incapable, through any unsoundness of mind, of giving legal consent; and second, the jury could not have properly found that the penetration was accomplished by duress or by threats of immediate and great bodily harm, accompanied by the apparent power to inflict such harm.

Ericson was charged with forcible penetration by use of a foreign object under former I.C. § 18-6608 (redesignated and amended effective July 1, 2022, as I.C. § 18-6604).  Idaho Code § 18-6608 provided, in part:

> Every person who willfully causes the penetration, however slight, of the genital or anal opening of another person, by any object, instrument or device:
> . . . .
> (2)      Where the victim is incapable, through any unsoundness of mind, whether temporary or permanent, of giving legal consent.

In Jury Instruction No. 12, the jury was instructed that the penetration must have occurred while J.D. "was incapable, through any unsoundness of mind, whether temporary or permanent, of giving legal consent."  Jury Instruction No. 14 explained the meaning of "unsound mind" as:

> A person is of unsound mind if that person is incapable of normally managing affairs in a reasonable manner.  Unsoundness of mind exists when the intellectual powers are fundamentally lacking, or where incapable of understanding

3

and acting with discretion in the ordinary affairs of life. The term "unsoundness of mind" includes a range of mental impairment.

Regarding unsoundness of mind, J.D. testified that she was unable to speak or move when Ericson stuck his finger inside her vagina. When asked on re-direct what was going through her head when Ericson started touching her thighs prior to the penetration, J.D. said, "I felt frozen, and I just kept thinking that he wasn't going to do anything because he was a professional." And, when Ericson "stuck his [finger] in [her] vagina," J.D. did not feel like she could move because she felt frozen and testified that she "was just stuck."

Also testifying at trial was Dr. Laura King. Doctor King testified about tonic immobility in conjunction with sexual assault victims, stating that:

> The hormones that are released in our bodies during a traumatic event can really affect someone's behavior, they can impair rational thinking, affect their emotions as well. So you might expect someone to be crying or hysterical after an assault and the hormones that are released can actually prevent that and have someone seem almost emotionless. The hormones can also prevent someone from physically fighting back in any way. They can actually cause someone to freeze during the assault.

According to Dr. King, this was a biological response and nothing an assault victim could control.

Ericson argues that, considering the evidence in the light most favorable to the State, the jury could not properly have found that J.D. was incapable--through any unsoundness of mind (whether temporary or permanent)--of giving legal consent. We disagree. J.D. testified that she was unable to speak or move when Ericson stuck his finger inside her vagina. Doctor King testified that tonic immobility is not a voluntary reaction, rather an uncontrolled biological response. Doctor King testified that, during tonic immobility, the flood of hormones can impair rational thinking and can cause a victim to freeze during an assault. Together, the testimony of J.D. and Dr. King satisfied the elements (under Idaho code and the jury instructions) that J.D. lacked a sound mind and was incapable of understanding and acting with discretion in the ordinary affairs of life.

Ericson argues that the "unsoundness of mind" language in the forcible penetration statute requires a more permanent mental abnormality. Ericson cites *State v. Soura*, 118 Idaho 232, 796 P.2d 109 (1990) and *State v. Doe*, 137 Idaho 691, 52 P.3d 335 (Ct. App. 2002) for the proposition that J.D.'s tonic immobility must have been brought about by a more permanent mental disease or

4

defect. Those cases do not stand for that proposition. *Soura* involved a victim who was considered to have an unsound mind for purposes of the rape statute based on her permanent mental condition. *Doe* involved a four-year-old victim, in which the juvenile defendant was initially charged with statutory rape under I.C. § 18-6101(1)--an offense unwaivable into adult court. The State attempted to amend the complaint to allege, under I.C. § 18-6101(2), that Doe committed rape of a female who was incapable of giving legal consent due to unsoundness of mind which is a waivable offense. On appeal, the district court rejected the State's argument that Doe could have been charged under I.C. § 18-6101(2) because the four-year-old victim's lack of consent was "simply because of her minority," not through any unsoundness of mind. *Doe*, 137 Idaho at 692-93, 52 P.3d at 336-37. Therefore, the juvenile jurisdiction waiver statute did not apply. *Id.* This Court affirmed the district court, holding that "'unsoundness of mind' does not include the normal mental capacity of a four-year-old child" and that "the State may not properly charge Doe with violation of [I.C.] § 18-6101(2) where the victim was a four-year-old with normal mental development." *Doe*, 137 Idaho at 694, 52 P.3d at 338.

*Soura* and *Doe* do not stand for the proposition that unsoundness of mind must be associated with an organic mental abnormality or defect. *Soura* and *Doe* do not negate the fact that former I.C. § 18-6608 permits proof that a victim was unable to consent to sexual contact because they were temporarily of unsound mind at the time of the incident. Those cases are not instructive in determining whether J.D. suffered temporary "unsoundness of mind" due to tonic immobility caused by Ericson's sexual assault on her. Further, Jury Instruction No. 14 states that "unsoundness of mind" includes "a range of mental impairment." Inasmuch as former I.C. § 18-6608(2) provided that "unsoundness of mind" could be temporary or permanent, tonic immobility (brought on by a sexual assault) can cause a victim to temporarily have an unsound mind. Doctor King's testimony that, upon such a traumatic event, the flood of hormones that are released can cause a person to freeze and although "meant to help protect ourselves they actually result in the victim not being able to move at all and not being able to think in a rational way." The evidence presented at trial was sufficient to support a finding that (at the time of the sexual contact) J.D. was not able to consent to it because she suffered from "unsoundness of mind" as described in former I.C. § 18-6608 and Jury Instruction No. 14.

5

Ericson also argues that, because J.D. did not specifically testify "that she was thinking irrationally while she was reportedly frozen and unable to talk," the State failed to show that she was of unsound mind. J.D. testified that Ericson's sexual assault caused her to freeze and become unable to speak and move. The State argues that J.D.'s reaction, by itself, shows that she was thinking irrationally. Doctor King's testimony, regarding tonic immobility, meets the requisites for irrational thought as far as it relates to unsound mind. Specifically, Dr. King explained that the hormones released during tonic immobility affect "the ability for the brain to process" and result in the victim "not being able to move at all and not being able to think in a rational way." The jury did not need J.D. to testify that she was not thinking rationally for the jury to conclude that she was not.

Because the evidence presented at trial was sufficient to show that J.D. temporarily suffered unsoundness of mind through "tonic immobility" there is no need to consider whether the evidence was also sufficient to alternatively show, as outlined in the second portion of Jury Instruction No. 12, that "the penetration was against [J.D.'s] will" and "accomplished by duress or by threats of immediate and great bodily harm, accompanied by the apparent power to inflict such harm." If there are two possible factual grounds for the jury's verdict (one reasonable and the other unreasonable), we will assume (absent a contrary indication in the record) that the jury based its verdict on the reasonable ground that is supported by sufficient evidence. *State v. Southwick*, 158 Idaho 173, 183, 345 P.3d 232, 242 (Ct. App. 2014). Ericson has failed to show that the State presented insufficient evidence to support his conviction for forcible penetration by use of a foreign object.

**B.      Proposed Testimony Regarding the Victim's Memory**

Ericson contends the district court abused its discretion when it excluded proposed testimony on J.D.'s memory issues as not being relevant. Specifically, Ericson argues that the evidence was relevant because it cast doubt on J.D.'s account of what happened. Ericson also contends that the district court abused its discretion when it determined (under Idaho Rule of Evidence 403) that the probative value of the proposed testimony was substantially outweighed by the dangers of needlessly presenting cumulative evidence, wasting time, causing undue delay, confusing the issues, or misleading the jury.

6

Evidence that is relevant to a material and disputed issue concerning the crime charged is generally admissible. *State v. Garcia*, 166 Idaho 661, 670-71, 462 P.3d 1125, 1134-35 (2020). Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. I.R.E. 401; *Garcia*, 166 Idaho at 670, 462 P.3d at 1134. Whether a fact is of consequence or material is determined by its relationship to the legal theories presented by the parties. *State v. Johnson*, 148 Idaho 664, 671, 227 P.3d 918, 925 (2010). We review questions of relevance de novo. *State v. Jones*, 167 Idaho 353, 358, 470 P.3d 1162, 1167 (2020); *State v. Aguilar*, 154 Idaho 201, 203, 296 P.3d 407, 409 (Ct. App. 2012). A trial court's determination under I.R.E. 403 will not be disturbed on appeal unless it is shown to be an abuse of discretion. *State v. Enno*, 119 Idaho 392, 406, 807 P.2d 610, 624 (1991); *State v. Clark*, 115 Idaho 1056, 1059, 772 P.2d 263, 266 (Ct. App. 1989).

During discovery, Ericson's counsel requested a subpoena duces tecum for the previous five years of J.D.'s medical records. The request was granted. The district court's order required J.D., in relevant part, to produce "all medical records from the time you received a traumatic brain injury [in 2016] until the present time" including "any and all medical records detailing what, if any, medications you are on." In response, the State filed a motion in limine, requesting an order from the district court that Ericson and his witnesses refrain from "mentioning, referring or alluding to": all medical records of J.D. obtained by the subpoena; any testimony by any medical providers seen by J.D.; and any "testimony or evidence regarding prior diagnoses, medications" that does not relate to the case and charges. Ericson filed an objection to the State's motion, with an attached "Statement of Cody Haas."

During the hearing on the State's motion in limine regarding medical evidence, Haas testified that approximately ten months before the events at issue in this case, he saw J.D. in his capacity as a mental health nurse practitioner for her anxiety, as well as her memory issues, depression, and lack of sleep. At the end of the visit, Haas issued J.D. a prescription for her anxiety and depression. Haas had never seen J.D. before, had not seen any of her prior medical records, nor did he see her as a patient after the initial visit. Haas stated that traumatic brain injuries were not his specialty but the scope of his practice often included being on the care team for a person with a traumatic brain injury. Haas also testified that part of his written statement (attached to

Ericson's objection) referred to J.D. as being unable to remember details from a work meeting that occurred prior to the appointment but his clinical notes indicated her inability to remember was due to her anxiety.

The district court denied the State's motion in limine to exclude Haas's proposed testimony, finding that potential memory issues of J.D. raised concerns "over confabulation" and that was something relevant to the proceedings. The State filed a motion to reconsider and a renewed motion in limine. The district court granted the motion in part, denied the motion in part, and deferred the motion in part.

Before trial, a different district court judge was assigned to the case. Addressing the deferred portion of the State's motion to reconsider and renewed motion in limine, the district court commented that the testimony offered by Haas would likely not be admissible because it was irrelevant. However, the district court left it open for Ericson to explain--at the point immediately before Haas would be called--why Haas's testimony would be relevant and why such relevance would not be outweighed by other factors, such as "the cumulative nature, waste of time, delay, and its tendency, potentially, to confuse the jurors as to what the issues are."

Prior to Ericson calling Haas to testify, and after argument by both parties, the district court determined that Haas "has no evidence to give regarding the incident itself." The district court determined, based on J.D.'s testimony, that there was no evidence that "she cannot recall the events" or "to suggest she has a problem with perceiving events." The district court ruled, "there's no probative value for this testimony." The district court also determined, "whatever probative value it has is substantially outweighed . . . by its tendency to one, waste the jury's time, delay the proceedings which have already been delayed enough." According to the district court, "[i]t's clearly cumulative, since both the victim and her friend testified she has memory problems, and it has the tendency to mislead or confuse the jury as to what the actual issues are."

The district court reasonably concluded that Haas's proposed testimony would not have been relevant because he had no knowledge of the incident and had treated J.D. only once (almost ten months before the crime); and because J.D. testified for about four hours (two hours being extensive cross-examination) and there was still no indication that she had any problem recalling events. Moreover, the incident Haas and Ericson identified as proving that J.D. had a significant memory problem was mistakenly attributed to a memory problem when, in actuality, Haas's

treatment notes indicated that J.D. forgetting what a recent meeting had been about was caused by her anxiety issues. Even if the evidence could be said to have some relevancy, Ericson fails to demonstrate the district court erred in determining, under I.R.E. 403, that any such relevance was substantially outweighed by confusion of the issues for the jury and its cumulative nature injecting undue delay. Ericson has failed to show that the district court abused its discretion by excluding the proposed testimony of Haas.

## IV.

## CONCLUSION

Ericson has failed to show that the State presented insufficient evidence to support his conviction for forcible penetration by use of a foreign object. Ericson has failed to show that the district court abused its discretion by excluding the proposed testimony of Haas. Therefore, Erickson's judgment of conviction for forcible penetration by use of a foreign object is affirmed.

Chief Judge GRATTON and Judge HUSKEY, **CONCUR**.